# BRIGGS v. GHRIST. Mayor, et al.

Under Pol. Code, § 2856, providing that, where the question of the sale of intoxicating liquors is submitted to a vote, the question shall be printed on the ballots, and to the left shall be printed the words "yes" and "no," and any one desiring to vote in favor of the question shall mark the word "yes" with an X, and vice versa, a ballot, on which the word "yes" was marked with an X and also mutilated by horizontal scratches across that word, cannot be counted, as the act of the voter rendered it uncertain as to whether he intended to cancel his affirmative vote or place on the ballot a distinguishing mark.

Where the question of the sale of intoxicating liquors was submitted to a vote, and a majority of the votes which could be counted were in favor of the question, but there was no majority of all the votes cast, the question failed to pass.

One seeking to overthrow the result of an election as shown by the ballots cast assumes the burden of proving, not only that there were illegal votes cast, but for which side such votes were cast.

Where, in a contest of an election submitting the question of the sale of intoxicating liquors, the trial court found that illegal votes were cast, but made no findings upon conflicting evidence as to how the votes were cast, and no other findings were requested, the court on appeal will dispose of the case as if no evidence was offered on the question for whom the illegal votes were cast, or as if the court had found that it was unable to determine the question.

Where the result of an election is contested, the whole vote of the precinct will not be thrown out because of illegal votes, unless the party attacking the legality of the votes alleges and proves fraud on the part of the election officials, and the burden is upon him to prove for whom the illegal votes were cast, and, if he fails to make such proof, the ilegal votes will be deducted from his vote, unless he satisfies the court that he could not by the exercise of due diligence show for whom the illegal votes were cast, in which case the votes will be deducted from the total votes of the several parties in the precinct.

(Opinion filed, January 31, 1912.)

Appeal from Circuit Court, Hand County. Hon. JOHN F. HUGHES, Judge.

Contest of election by G. C. Briggs against S. V. Ghrist, as Mayor, Fred J. Hellmuth, as City Auditor, and John T. McCullen and others, as members of the City Council of the City of Miller, and others. From a judgment for defendants, contestant appeals. Reversed and remanded, with directions.

*Laurits Miller, F. R. Fisher,* and *J. H. Cole,* for appellant.

Where fraudulent and illegal votes are shown to have been cast, but it cannot be ascertained for whom they were cast, the burden is upon him who seeks to take advantage of the returns to show the actual number of legal votes received. Rhodes v. Driver, 69 Ark. 501; People ex rel Judson v. Thacher, 55 N. Y. 525; Whaley et al. v. Thompson, 93 S. W 212 (Tex.). Section 1923, Rev. Pol. Code of 1903, provides that: "No elector shall place any mark upon his ballot by which it may afterwards be identified as the one voted by him," and a violation of this provision is made a criminal offense. This provision of the code is mandatory and its violation will destroy the validity of the ballot. Treat v. Morris et al., 25 S. D. 6. 15; Church v. Walker, 10 S. D. 450; Laver v. Estes, 120 Cal. 652; Langley v. Head, 142 Cal. 368; Tebbie v. Smith, 108 Cal. 108; Whittan v. Zahorick, 91 Ia. 23; Voorhees v. Arnold, 78 N. W. 795, Ia.; Mauck v. Brown, 81 N. W. 313, Neb.; Parvin v. Winberg, 130 Ind. 561; Dennis v. Caughlin, 29 L. R. A. 731; Bloedell v. Cromwell, 116 N. W. 947; Elwell v. Comstock, 99 Minn. 261. This rule holds true even though the marks were placed on the ballot innocently. Bloedell v. Cromwell, 116 N.

W. 947; Elwell v. Comstock, 99 Minn. 261. A notice of contest or an answer to such notice where the cause of action or defense is based upon illegal votes, must set out the names of the illegal voters and also the reason why they are not entitled to vote. Preston v. Culbertson, 58 Cal. 198; Norwod v. Kenfield, 30 Cal. 393; Paulk v. Lee, 117 Ga. 6; Lunsford v. Coulton, 23 S. W. 946; State v. Lazier, 77 Miss. 146.

. *H. J. Bushfield* and *John Pusey*, for respondents.

Section 1929 that "Any ballot or parts of ballots from which it is impossible to determine the elector's choice shall be void and shall not be counted: Provided, that when the cross marks on a ballot are sufficiently plain to gather thereform a part of the voter's intention that it shall be the duty of the judges of election to count such part." State ex rel. Chilson v. Harris, 22 S. D. 111. A substantial compliance or a bona fide attempt to comply with the statutory requirements is sufficient. Tivelston v Hugo, 83 N. W. 500; State ex rel. Orr v. Fawcett, 49 Pac. 346. When the intention of the elector to make a cross is clearly apparent, and the cross is made, whether with a stamp or otherwise, any informality in making it should be disregarded. Le Clare v. Wells, 7 S. D. 428; McMahon v. Polk, 10 S. D. 296; Parmley v. Healey, 7 S. D. 401; Bloedell v. Cromwell, 116 N. W. 947. Irregular and defective markings do not justify rejection. Bingham v. Broadwell, 103 N. W. 323; Griffith v. Bonarvitz, 103 N. W. 327; Bloedel v. Cromwell, 116 N. W. 947; White v. Slama, 130 N. W. 978; Orr v. Fawcett, 49 Pac. 346· In re Lannon, 120 N. W. 1083; Wittam v. Z ahork, 59 N. W.·

WHITING, J. This is an election contest contesting the declared result of an election held in the city of Miller, upon the question: "Shall intoxicating liquors be sold at retail?" The canvassing board found that. there were 369 votes cast, of which it returned 186 as cast in favor of the sale, 182 against, and 1 blank. Upon the trial plaintiff offered in evidence all the ballots cast at the election and then rested his case. There was no dispute as to how the several votes had been counted by the canvassing board, and plaintiff contended that certain ballots counted in

favor of the question should not have been so counted. After plaintiff had rested his case, the defendants offered no evidence except to explain the cause of peculiar markings on the ballots and to sustain an affirmative defense, to-wit, that there were three votes cast by persons not qualified voters, and that such votes were cast. against the question submitted. The trial court made the contested ballots a part of its findings and, as conclusions of law, found that one of such ballots should not have been counted in favor of the question submitted but that all the others were properly so counted. It further found that there were three illegal votes cast, but did not find for which side such votes were cast. though it did find what the illegal voters testified in relation thereto, As a final conclusion it found that a majority of the votes were cast in favor of the question and entered judgment accordingly. This appeal is from such judgment.

[1] Appellant insists that the trial court erred in its conclusion that all the contested ballots save one were rightfully counted by the canvassing board. There are several of these ballots so marked as to raise serious questions concerning whether or not they should be rejected as bearing distinguishing marks; but, under all the evidence received, we believe the conclusion of the trial court should be sustained except as to ballot Exhibit L3. The trial court was clearly in error in counting this ballot in favor of the question submitted. Under the statute of this state (section 2856, Rev. Pol. Code), the question submitted is printed upon the ballot, and to the left of said question are printed the words "yes" and "no"; and any one desiring to vote in favor of the question should mark the word "yes" with an "X" and if desiring to vote against it should mark the word "no" with a cross. It has, however, been held that, where squares have been placed before the word "yes" and "no," the voter may mark the proper one of such squares, instead of marking the word opposite. Treat v. Morris, 25 S. D. 615, 127 N. W. 554. The party casting ballot, Exhibit L3, had almost completely canceled and effaced the word "yes" by drawing across the whole thereof several horizontal pencil marks He had also placed across said word, in pencil, an "X." The mark-

ings were evidently made with the same pencil, and it is impossible to detemine which was made first. If the canceling was first, the effect thereof was to indicate, in a manner not authorized, an inteut to vote "no," or else an attempt to deliberately mark the ballot for an unlawful purpose. An "X" placed across the canceled word would be a nullity. If the "X" was first placed upon the ballot, then the effect of the horizontal lines was to efface and cancel both the word "yes" and the "X." No interpretation can be given this marking that would authorize its being counted either for or against the question.

[2] The result is that under the findings of the trial court, which findings are in no manner questioned, when plaintiff rested his case, it had been proven that at such election 369 votes were cast, 184 in favor of the question, 182 against, 1 blank, and 2 so marked that they could not be counted either way. It conclusively appeared that the question had not received, in favor thereof, a majority of all the votes cast, and, under the established law of this state, the question had failed to carry. Treat v. Morris, supra.

[3] Defendants, when they attempted to overthrow the result of the election as shown by the ballots cast thereat, became, for the purpose of establishing such defense, the contestants, and assumed the burdens of proving, not only the fact that illegal votes were cast, but also as to which side such votes were cast for.

[4] The court found, upon undisputed evidence, that there were three illegal votes. As to how these votes were cast was disputed. We agree with the Supreme Court of California in holding, in the case of illegal votes, "very clear evidence should be furnished as to how one did vote before his vote can be deducted from the total of any candidate." It is quite probable that, not only the trial court, but counsel for both parties, recognized this rule, and that this is the reason that no finding was made as to how the votes were cast. The evidence thereon was conflicting. It does not appear that defendants requested any finding thereon, and the defendants have not appealed. We must therefore treat this case exactly as though no evidence had been offered upon the question of how these men voted, or as if the court had expressly found that it was unable to determine the question.

[5] In Paine's Law of Elections, § 513, it is held: "Where illegal votes have been cast, the true rule is to purge the poll, by first proving for whom they were cast, and thus ascertain the real vote; but,.if this cannot be done, then to exclude the poll altogether." In a note to such section it is said: "Four distinct courses will be open to the court: * * * (1) To reject the entire poll; (2) to disregard the illegality; (3) to make a pro rata reduction of the vote of each candidate; and (4) to take all the illegal votes from one candidate." The dangers of each method are noted, and the conclusion is reached that: "In the total absence of proof tending to show for whom illegal votes, sufficient in number to affect the result, were cast, the duty of the court would seem to be to choose, as wisely as possible, between a disregard of the illegality, and a rejection of the entire precinct vote." We certainly could not agree that the vote of a precint should be rejected unless there was evidence tending to show that the election officers were knowing to the illegal voting and the purity of the whole vote thus questioned. In McCrary on Elections (4th Ed.) § 495, it is said: "In purging the polls of illegal votes, the general rule is that, unless it be shown for which candidate they were cast, they are to be deducted from the whole vote of the election division, and not from the candidate having the largest number. Of course, in the application of this rule such illegal votes would be deducted proportionately from both candidates, according to the entire vote returned for each." A case cited by McCrary, and which is recognized as a leading authority upon the question before us, is that of People v. Cicott, 16 Mich. 283, 97 Am. Dec. 141, decided when the bench of the Supreme Court was filled by Justices Cooley, Campbell, and Christiancy. In this case each of these judges wrote an elaborate opinion, and the question before us was most fully discussed by Justice Cooley, and he holds that, in harmony with a statute such as we have (section 1927, Rev. Pol. Code), requiring of the canvassing board: "If the ballots in the box shall be found to exceed in number the whole number of votes on the poll lists they shall be replaced in the box, after any such ballots folded together are destroyed, and one of the judges shall publicly draw therefrom as many ballots, as shall

be equal to such excess"—the court should make a division of the
illegal votes based upon the law of probabilities, and therefore
apportion them pro rata according to total votes of each party.   In
the case of Chaisser v. York, 211 Ill. 56, 71 N. E. 940, the court
says: "From an examination of the testimony in this record we
think the court was justified in its conclusion as to the number of
illegal votes cast at the election, that 5 thereof were cast for the
appellant and 4 for the appellee, and that as to 6 it could not be
reasonably ascertained for whom they were cast, and that they
were properly apportioned between the candidates.   People v.
Cicott, 16 Mich. 283, 97 Am. Dec. 141."   In the case of Hefron v.
Mahony, 9 Mont. 497, 24 Pac. 93, 18 Am. St. Rep. 757, after dis-
cussing the views of Paine and McCrary, the court concludes that
the court should either reject the entire vote of the precinct or
else apportion the vote.   In that case the votes were apportioned,
and this disposition of the Montana case seems to have met the
approval of the court in Moore v. Sharp, 98 Tenn. 491, 41 S. W.
587.   In Russell v. McDowell, 83 Cal. 70, 23 Pac. 183, it was held
that, under their statute, the burden was upon the party alleging
illegality not only to prove the fact that there were illegal votes
cast, but also to prove for whom cast, and, where there is a failure
to prove how cast, that it is proper to apportion them pro rata.
In Atty. General v. May, 99 Mich. 538, 58 N. W. 483, 25 L. R. A.
325, the court, in speaking of the rule that illegal votes should
be apportioned pro rata according to total votes received by each
party in the precinct, said: "It is a fair way to arrive at results.
The rule is based upon the proposition that the illegal votes have
gone into the boxes without the fault of either candidate.   If these
illegal votes can be separated from the legal ones, so that the
number is substantially ascertained, then the poll is too large by
exactly that number, and they must be cast out.   In casting them
out, the rule laid down by the court below is sustained by Mc-
Crary, Elect. (3d Ed.) § 460."   The Michigan court quotes in
support of the above 6 A. & E. Ency. Law, 353, and also cites
People v. Cicott, supra.

In Napier v. Cornett, (Ky.) 68 S. W. 1076, the court said:
"But the court applied the rule laid down in McCrary, Elect. §

495, in purging the returns of the illegal votes shown to have been thus cast, but as to which the testimony did not show for whom they were cast, by deducting them proportionately from both candidates, according to the entire vote returned for each. It is suggested that the case of Major v. Barker [99 Ky. 305, 35 S. W. 543] furnishes authority for this rule in this state. This is an error. In that case the testimony of the clerk who marked the ballots showed for what candidate he marked them. After full consideration, we have concluded that the rule laid down in Mc-Crary is unsafe, and is not applicable to a case like this, where it is not shown to be impossible, by the use of due diligence, to show for whom the illegal votes were cast; and that is the only class of cases to which McCrary holds that rule should be applied. He says: 'Let it be understood that we are here referring to a case where it is found to be impossible by the use of due diligence to show for whom the illegal votes were cast. If in any given case it be shown that the proof was within the reach of the party whose duty it was to produce it, and that he neglected to produce it, then he may well be held answerable for his own neglect and because it was his duty to show for whom the illegal votes were cast, and because he might, by the use of reasonable diligence, have made this showing, it may very properly be said that he should himself suffer the loss occasioned by deducting them from his own vote.' The presumption is in favor of the regularity and authenticity of the returns. The burden is upon the contestant to overcome that presumption. * * * We concur with Judge McCrary that 'the ordinary principle which requires the party holding the affirmative to prove the facts, and all the facts, necessary to make out this case, is the better rule, and that it will in all cases be safer to follow it.' The contestant had the burden, and that burden was only partially sustained by showing that illegal votes were cast. In order to make out his case, he must show for whom they were cast."

Both from reason and the authorities cited, and also in view of our statute requiring the drawing out of any excess ballots in a ballot box—which statute, as was stated by Justice Cooley, is

based upon the law of probabilities, which law is just as applicable in the case of illegal ballots—we hold the law to be that, unless the party attacking the legality of the votes alleges and proves fraud upon the part of the election officials such as to warrant throwing out the whole vote of the precinct, the burden is upon him to prove for whom the illegal votes were cast; and, if he fails to make such proof, the illegal votes should be deducted from his vote, unless he satisfies the court that he could not, with the exercise of due diligence, show for whom the illegal votes were cast, in which case they should be deducted from the total votes of the several parties in the precinct and in the ratio of the total vote of each to the total of the precinct.

We believe, in the case at bar, the trial court would have been justified in deducting the illegal vote pro rata, and this rule is the more favorable to defendants. The trial court has, however, failed to make any finding as to the precinct in which these votes were cast. A glance at the evidence, however, shows that, whichever precinct the votes may have come from, at least one vote must be deducted from the total cast in favor of the question submitted. If, in the absence of findings as to the votes from the several precincts, we should treat the whole city as one precinct, the same result would follow.

We thus find that there were 369 votes returned. 186 were canvassed in favor of the question submitted. The canvassing board erred in counting 2 of said votes in favor of the question At least 1 more vote must be deducted from this total owing to the illegal votes cast. Not to exceed 183 legal votes out of a total of 366 legal votes were cast in favor of the question submitted, and said question failed to carry.

The judgment of the trial court is reversed, and it is ordered to enter a judgment to the effect that the question, "Shall intoxicating liquors be sold at retail?" did not receive a majority of the votes cast at the election mentioned in the complaint herein.

HANEY, J. (concurring specially). Assuming that the number of voters of the city should be determined by the number who voted at the election at which the question of selling intoxicating

liquors was submitted, that the number who voted at such election was 369, that of this number 3 were not entitled to vote, and that the whole number of voters of the city should be regarded as 366, it would require at least 184 ballots properly marked as votes in favor of the sale to authorize the granting of permits or licenses. Laws 1903, c. 166. As I understand the record on this appeal, it affirmatively shows that the number of ballots properly marked as votes in favor of the sale was less than 184. So I concur in the conclusion that the judgment of the circuit court should be reversed, with directions to enter judgment in favor of the plaintiff, without considering the questions presented by the record relating to illegal votes.

CORSON, J.   I concur in the concurring opinion of Judge HANEY.