Note.—Reported in 203 N. W. 199. See, Headnote, American Key-Numbered Digest, Vendor and purchaser, Key-No. 196, 39 Cyc. 1605, 1629.

---

NARAMORE, Respondent, v. SPRAGUE, Appellant.

(202 N. W. 905.)

(File No. 5845.   Opinion filed March 20, 1925.)

1. Elections—Ballots—Ballot Not Invalidated by Mark Constituting Defect in Paper.

Brown diagonal mark running across square at left of one candidate held not to render ballot invalid, it being apparently a defect in the paper itself.

2. Elections—Ballots—Ballots Held Valid, Where Nothing to Show that Smears Were Not Pure Accidents.

Ballots held valid, where there was nothing to indicate that smears thereon in certain voting squares were not pure accidents.

3. **Elections—Voters—Ballots Held Sufficient Where Voter Used Implement Provided by Election Board in Honest Endeavor to Express His Intention.**

   Ballots, apparently marked with a rubber stamp, held sufficient, though crosses were very imperfect, where voter used implement apparently provided by election board in honest endeavor to express his intention.

4. **Elections—Ballots—Ballot Held Sufficient, Though Larger Part of Cross Was Outside of Square.**

   Ballot with cross at left of candidate's name, though larger part of cross was outside of square, held sufficient, where from stamp furnished voters it was physically impossible to make cross entirely within square.

5. **Elections—Voters—Law Requires Cross Opposite Name of Candidate to Be Placed in Square.**

   Law requires cross to be in square opposite name of candidate.

6. **Elections—Ballots—Ballots Held Sufficient, Though Impression of Cross Made by Rubber Stamp Was Imperfect.**

   Ballots marked with rubber stamp held sufficient, though impressions made were very imperfect, due apparently to too much or too little pressure or incorrect holding of stamp.

7. **Elections—Ballots—Ballot Containing Imperfect Cross, Made by Rubber Stamp, Held Sufficient.**

   Ballot having ink mark in circle at head of party column, with only part of cross showing, held sufficient, where apparently made with rubber stamp used on other ballots from that precinct.

8. **Elections—Ballots—Ballots Held Sufficient, Though Printing Irregular.**

   Ballots held valid, where only irregularity was that, in printing, part of impression of one ballot was carried onto back of others.

Appeal from Circuit Court, Clark County; Hon. W. N. Skinner, Judge.

Action by C. N. Naramore against G. E. Sprague. Judgment for plaintiff, and defendant appeals. Reversed, with directions.

*R. A. Dunham,* of Clark, for Appellant.
*W. C. Brower,* of Clark, for Respondent.

(2)   To point two of the opinion, Appellant cited:   Dennis
v. 'Caughlin, 41 Pac. 768; McMahon v. Polk, 73 N. W. 77.

(4)   To point four, Appellant cited:   Treat v. Morris, 127
N. W. 554.

McNENNY, Circuit Judge.   This is an appeal from a judg-
ment of the circuit court of Clark county rendered in an election
contest growing out of the general election of November 4, 1924.

At said election the plaintiff and respondent, C. N. Nara-
more, was a candidate for county commissioner on the Republi-
can ticket.  C. E. Sprague, defendant and appellant, was a candi-
date for county commissioner in the Independent column, and
there were no other candidates for that office.   The judges of
election counted 283 votes for defendant and appellant Sprague,
and 282 for plaintiff and respondent Naramore.   Naramore then
instituted a contest.   Upon agreement of parties O. H. Ames,
Esq., of Clark, was appointed referee.   There must have been a
miscount by the judges of election as the referee only reports
receiving 563 ballots.   Of these 57 were challenged before the
referee.   The referee struck out 23 of the challenged ballots as
being invalid and improper to be counted for either party.

The findings and conclusions by the referee were that, of the
votes cast, each party was entitled to 270 votes, and 23 were
held invalid for any purpose.   Upon the matter coming on to be
heard before the court for confirmation, the court struck out an
additional 9 votes, 6 of which had been cast for Sprague and 3
for Naramore, and thereupon entered judgment in favor of Nara-
more, and against Sprague.   Sprague then excepted to the find-
ings and conclusions of the court, both as to the additional 6
votes which the court disallowed, but which the referee had
allowed, and in addition 4 votes that had been disallowed by the
referee and the disallowance confirmed by the court.   He then
perfected his appeal to this court and assigned as error the failure
of the court and the referee to count said 10 votes in his favor.   The
respondent, Naramore, in his brief contends that if any of the dis-
allowed ballots should be counted for Sprague, that certain disal-
lowed ballots should then be counted for Naramore.   With one ex-
ception, neither party complains that there are any ballots counted
that should have been held invalid, but it is the contention of

Sprague that valid ballots were held ʼinvalid, and Naramore re-
sponds that, if that is true in Sprague's case, then it is true in his
own case, and he specifies several ballots voted for him, but re-
jected, that should be allowed him in case the judgment of the
circuit court is disturbed in any wise.  As is usual in these cases
any rule will ordinarily work both ways, so that there is very
little disagreement by counsel for the respective parties as to the
principles of law that govern these contests, but only as to their
application to the particular ballots.

[1]   The first ballot we will consider, Exhibit G-10, is one
that was voted for Sprague, but rejected by both the referee and
the trial court.  This ballot was marked with a rubber stamp in
black ink in the square to the left of the name of every Repub-
lican candidate except Naramore, and with a similar mark in the
square at the left of Sprague's name.  No other mark appeared upon
the ballot, except a brown diagonal mark running across the square
at left of the name of A. Amundson, candidate for railroad com-
missioner on the Independent ticket.  This mark is not uniform in
width and both ends run off to feather edges.  The mark is not made
with ink nor with ordinary lead pencil.  The ends extend through
the square at the top and bottom, so that the black lines of the
square and this brown line intersect at two places.  The line shows
through on the back almost as clearly as in front.  It is very dif-
ficult to tell, with the naked eye or a common reading glass,
whether the brown line is above or underneath the black line by
observing the face of the ballot.  On the back of the ballot, how-
ever, the brown line shows up very plainly but the black line
shows only faintly.  By observing it with a medium powered
microscope it would seem, when looked at from both sides, that
the black line was put on after the brown line.  The brown line
has many appearances of being a defect in the paper itself.  We
are therefore of the opinion that this ballot was erroneously re-
jected, and should be counted for Sprague.

[2]   The next group of ballots consist of G-7 and C-8, con-
taining votes for Sprague.  These ballots were rejected by the
referee and trial court under what may be termed the erasure
rule.  G-7 had a mark applied with a rubber stamp in the square
at the left of the name of Conrad I. Jackson, candidate for jus-
tice of the peace on the Republican ticket, and no mark for his

opponent, but there is a dirty blotch covering the mark and extending over the name Conrad. This may have been caused by a dirty thumb in undertaking to separate the ballots. F-6, voted and counted for Naramore, has a smear on the name of M. G. Eggen, very similar to the alleged erasure on the name of Jackson.

C-8 was marked with a rubber stamp in the square at the left of the name of E. J. Ellis, justice of the peace on the Farmer-Labor ticket, and had no mark for his opponent. The ballot looks as though a finger or thumb had been drawn through the cross while the ink was wet, and carried a light smear of ink out of the cross and completely over the name of Ellis. From the appearance of the smear it might readily have been done in drawing the hand across the ballot for the purpose of folding it. There is nothing on either of the rejected ballots to show that the smears are not pure accidents, and we are of the opinion that both of the ballots should have been counted for appellant Sprague.

In the rehearing in Church v. Walker, 10 S. D. 450, 74 N. W. 198, the court reversed their prior decision in the same case found in the same volume at page 90 (72 N. W. 101), and upon the authority of McMahon v. Polk, 10 S. D. 296, 73 N. W. 77, 47 L. R. A. 830, held:

"* * * 'The Legislature never intended to disfranchise a legal voter, who, in substantially complying with the mandatory requirements of the law, has, without an evil purpose, but by accident or inadvertence, made a blot or mark upon his ballot, which in no manner tends to distinguish the same, or divulge the secret within his breast.' * * * Unless, therefore, the ballot has been marked intentionally * * * the judges of election shoud presume that the marking was inadvertently done, and count the ballot."

[3] The next group of ballots, admitted by the referee, but rejected by the trial court, consists of Exhibits C-7, C-10, E-4, G-8, and G-12, all of which were voted by marks in front of the name of Sprague and not in front of the name of Naramore. These ballots were all apparently marked with a rubber stamp. The crosses on all were more or less imperfect. Upon some of them there were no perfect crosses, but it was plain to be seen that they were all marked with the rubber stamp. The imperfec-

tions may have been caused by a defect in the stamp itself, or by stamping when the paper rested upon an uneven surface, or by holding the stamp in such a manner that the face of it would not come squarely down upon the paper. We are inclined to think that, while the crosses are very imperfect, the voter having used the implement that was apparently provided by the election board, in an honest endeavor to express his intention, the votes should all have been counted.

In Treat v. Morris, 25 S. D. 615, 622, 127 N. W. 554, 557, this language is used:

"Where an elector has attempted to make * * * a cross in the circle, and by reason of a defect in the stamp or pencil, not properly making a clear cross * * *, then there is an intention to mark the ballot in accordance with the method prescribed by statute, and under such circumstances should be counted, * * * *"

To the same effect is the negative language used in Ward v. Fletcher, 36 S. D. 98, 106, 153 N. W. 962, 965, where it is said:

"The trial court improperly counted * * * two ballots * * * each having, in the square * * * a mark in no manner resembling an X. These marks were made with pencil, and clearly show that neither elector was attempting to make an X."

In Vallier v. Brakke, 7 S. D. 343, on page 357, 64 N. W. 180, 185, the court in its opinion says:

"In No. 8 the court finds that the mark in the circle at the head of the Republican ticket was a cross made with the official stamp. This we think was correct. If the intention was to make a cross in the circle, any informality in carrying that intention into effect, so long as the act was done in the manner prescribed by the statute, was properly disregarded."

In Ward v. Fletcher the court says (opinion, page 107 [153 N. W. 965]):

"The trial court improperly refused to count * * * a ballot * * * marked in the square in front of the word 'No.' The mark was made with the official stamp. At first glance it appears to be but a straight line, but a careful examination reveals a trace of the lines of the cross, and it is clear that the elector made the mark with the stamp, but by pressing down upon one

edge of such stamp. The elector has endeavored to express his intention in the manner provided by law."

[4, 5] The next ballot contended for by the appellant is B-5, admitted by the referee and rejected by the court. This ballot has crosses at the left of practically every Republican nominee with the exception of Naramore, and has a cross at the left of Sprague's name. but the larger part of the cross is outside of the square. The law requires the cross to be in the square. The cross used. on practically all of these ballots was larger than the square, so it would have been physically inpossible to make the cross entirely within the square when using the stamp. Inasmuch as some part of this cross was within the square, we are of the opinion that the ballot was not invalid.

In Treat v. Morris, 25 S. D. 615 (opinion, page 619), 127 N. W. 554, one of the ballots had a cross to the left of the circle and to the left of the word "Yes." The court held that the ballot should not have been counted because the cross neither marked the word "Yes," nor was in the circle at the left of the word "Yes." The court says (page 620 [127 N. W. 556]):

"When the statute provides that the elector shall mark the word 'Yes' or 'No' with a cross, we take that to mean that the word 'Yes' or 'No' to be marked with a cross, must be touched by the cross in order to so mark the word, otherwise when the cross is not touching the word the word would not be marked by the cross. Were is permissible to count the word as marked by the cross when the cross does not come in contact with the word, we would then be required to go into the realm of comparative distances. * * * "

The reasoning of the court is clearly applicable to this case, the law governing this ballot providing that the cross must be inside of the circle, and in the Treat-Morris Case providing that the cross must mark the "Yes" or "No." If one prong of the cross touching the word "Yes" is sufficient to mark the word, then one prong of the cross being inside of the square is sufficient to make it in the square, and in either case the question of comparative distance is eliminated.

In Ward v. Fletcher, 36 S. D. on page 106, 153 N. W. 965, the court in the opinion says:

"The trial court improperly counted * * * a ballot *
* * having the X so placed that the junction of the X was ex-
actly on the line between the two squares before the words 'Yes'
and 'No.' "

In that instance, of course, there was as much of the X in
the "Yes" square as in the "No" square.

[6] It is now contended by the respondent that if any of
the ballots contended for by the appellant should be held valid,
then that certain ballots voted in his favor and rejected should
likewise be counted. The first group which he presents is that
consisting of the ballots marked E-6, C-4, and E-8. Exhibits
E-6, C-4, and E-8 were ballots that were voted for Naramore,
counted by the referee and excluded by the trial court. Ballot
E-6 was marked with the rubber stamp but was apparently inked
and pressed too heavily, in many cases, especially at the left of the
name Naramore, amounting to little more than a blotch. C-4 is
just the opposite of E-6 in that too little ink was used, and the
stamp apparently not correctly held. E-8 has an ink mark in the
circle at the head of the Republican ticket and no other mark on
the ticket. In this case also, too much ink was used and too much
pressure applied. The outlines of part of the cross are discern-
ible. For the reasons heretofore stated, we are of the opinion
that these ballots should have been counted for respondent.

[7] The next ballot contended for by the respondent is C-12,
which was a ballot rejected by the referee and the trial court.
This ballot has an ink mark in the circle at the head of the Re-
publican ticket and no other mark upon the ballot. The ink is
the same color as the ink used upon the other ballots from this
precinct. It may have been that the stamp was not sufficiently
inked, and was pressed down a number of times. There are
traces of what appears to be a part of the cross showing. While
the cross in this case was probably the most imperfect and indis-
tinct of any on the several ballots, we believe that the mark was
made with the rubber stamp, and that the ballot should be counted
for respondent. The mark in the circle on this ticket is not very
much different from the mark in the square at the left of
Sprague's name on Exhibit C-7, both evidently made by the same
stamp and with the same ink.

The next group presented by the respondent consists of Exhibits B-2, -3, F-1, C-6, and E-3. These ballots all have erasures upon them, and, while some of the erasures are more neatly executed than others, there is no doubt that all of them were intentionally made. The paper is in some cases very much abraded, and in other cases are pencil marks almost obliterating the cross and name. In addition to the five contended for there are two others that differ only in degree, D-2 and A-1. As offsetting these we find Exhibits C-1, B-4, C-9, E-5, D-3, G-4, and G-6, ballots that had been voted for Sprague and likewise erased, or marked out intentionally. It is true that on some of the Sprague ballots the voter, in attempting to erase the mark, has made a hole in the paper, but they are all erasures, nevertheless, and one can be seen about as plainly as the other. While the decisions of the courts, and even of this court, are not in harmony on the question of erasures and many courts hold that an erasure should not vitiate the ballot, if the voter's intention can be clearly gathered, still in view of the fact that any ruling in this matter—which would necessarily have to include all of the ballots referred to in this paragraph—would have no effect upon the ultimate rights of the parties, we deem it unnecessary to further consider these exhibits.

[8] It is next suggested by respondent that the Exhibits F-2, F-3, F-4, and F-5 were improperly counted by the referee and court in favor of defendant Sprague. The only irregularity on these ballots consisted of what is called by the printers an "offset," that is the ink upon the next ballots was not sufficiently dry when the ballots were laid on top of them and part of the impression was carried onto the back of the ballots that were objected to. This irregularity is so similar to the objection disposed of in the case of Dunn v. Gamble, 47 S. D. 303, 198 N. W. 821, that we consider it controlled by that case. In the Dunn-Gamble case the irregularity consisted of the impression of the official ballot stamp upon the face of the ballot, apparently made by one of the election judges by mistake. This was held not to vitiate that ballot. To the same effect is Olson v. City of Lemmon, 33 S. D. 380, 146 N. W. 592.

There is one other vote for which Sprague contends, but in the view we have taken of the case that would not change the

result. Inasmuch as the exact proposition may never arise again; and in order that the counting of ballots may be kept as free from rules that do not tend to simplify the process of counting as possible, we refrain from making any decision upon this ballot. It appearing, therefore, that 9 votes cast for Sprague and 4 votes cast for Naramore were improperly rejected, the result is a net gain for Sprague of 5 votes. As the trial court held that he was defeated by 3 votes, this holding necessarily gives him a majority of 2 votes.

The findings of the trial court to this extent and the judgment are therefore reversed with directions to enter judgment in favor of Sprague and against Naramore, and directing that the certificate of election issue to Sprague.

McNENNY, Circuit Judge, sitting in lieu of ANDERSON, J., disqualified.