CAMERON, Appellant, v. BABCOCK, Respondent.

(262 N. W. 80.)

(File No. 7819.   Opinion filed July 23, 1935.)

*C. R. Jorgenson,* of Watertown, for Appellant.
*Robert D. Jones,* of Milbank, for Respondent.

RUDOLPH, J., As disclosed in the opinion of Roberts J., the principal issue to be determined in this case is whether our statutory provisions relating to registration of voters are mandatory or directory.   The opinion holds that that portion of section

7082 (Rev. Code 1919), which provides that "no vote shall be received at any election in the state if the name of the person offering the vote be not on such registry list unless such person shall furnish to the judges of election his affidavit," etc., is mandatory, and that a failure to comply therewith renders the vote cast illegal, and refrains from passing upon the broad contention of the respondent that all provisions of the registry law are mandatory.

█ █ As disclosed in the opinion of Judge Roberts, the holdings are in conflict upon the question of whether statutes similar to our registry statutes are mandatory or directory. It is impossible for us to reconcile these conflicting decisions, and no useful purpose would be served in an attempt to differentiate between statutes held to be mandatory and those held to be directory. Montana originally took the position that similar statutes were mandatory. See Price v. Lush, 10 Mont. 61, 24 P. 749, 9 L. R. A. 467. Thereafter, the Montana court reversed its position and held such statutes directory only. See Stackpole v. Hallahan, 16 Mont. 40, 40 P. 80, 28 L. R. A. 502; Goodell v. Judith Basin County, 70 Mont. 222, 224 P. 1110. Wisconsin in the early case of State v. Hilmantel, 21 Wis. 566, 574, took the position that the Wisconsin registry statutes, which in many respects are similar to our own, were mandatory in their entirety, and that any failure to comply therewith rendered the votes cast illegal. However, in the more recent case of State v. Barnett (1923) 182 Wis. 114, 195 N. W. 707, the majority of the Wisconsin court receded from the original position to the extent that it is now held in Wisconsin that the registry statutes are mandatory to the extent that they render votes cast illegal only when there is a failure to conform to the provision of the Wisconsin law similar to the provision of our Code set out above, which states in effect that no vote shall be received at any election in the state if the name of the person offering the vote be not on the registry list, unless such person shall furnish an affidavit, etc. The Wisconsin court observes some difference in the Wisconsin statutes between the duty cast upon the elector to qualify himself to vote by having his name appear upon the registry list, and to the duty to qualify himself to vote in the event his name does not appear upon that list. We are unable to determine that there is any material distinction between the duty cast upon

an elector to qualify himself to vote by getting his name to appear on the registration list under the provisions of sections 7079, 7080, and 7081, as amended by chapter 144, Laws of 1931, and the duty cast upon the elector under section 7082 to qualify himself to vote in the event his name does not appear upon the registration list. It seems to us that if our registry statutes are mandatory, they are mandatory to their full extent, and we do not believe that they are, or were ever so intended, when the effect of holding them mandatory would be to disfranchise an elector, who is qualified in every respect except that he has not complied with the provisions of these statutes, and after he has been permitted by an election board to cast his ballot. Under the terms of the statutes no doubt the election board could insist that the statute be strictly complied with before permitting a vote to be cast. The statute goes only to the extent of saying that "no vote shall be received"; it does not declare that after a vote has been received it shall be an illegal vote for failure to comply therewith. We believe the rule announced by the Indiana court in the case of Jones v. State ex rel Wilson, 153 Ind. 440, 55 N. E. 229, 233, is sound, wherein that court said: "All provisions of the election law are mandatory, if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void."

In this case it is conceded that all of these 22 voters were legal voters except for the failure of their names to appear upon the registration lists, or to substantially comply with the statute in furnishing affidavits, etc. It follows from what we have said above that, in our opinion the illegality of these 22 votes was not established.

While, perhaps, not material because of our holding that our registry laws are directory only when it is sought to invalidate a vote because of noncompliance therewith, nevertheless we wish to concur in the opinion of Judge Roberts so far as it relates to the rule announced in the case of Briggs v. Ghrist, 28 S. D. 562, 134 N. W. 321.

■ Respondent insists further that certain contested ballots were erroneously counted by the trial court in favor of the appellant. We refer first to a group of seven ballots, each of which contained in the squares before some candidate's name, other than appellant or respondent, a diagonal line. In some of the ballots the line extended from one corner of the square across the square to the other corner; while in other ballots the line extended only partially across the square. Respondent insists that the court erred in counting these ballots because such ballots were identified ballots within the meaning of section 7273, R. C. 1919, as amended by chapter 222, Laws of 1921. A careful examination of the questioned ballots discloses that there was no uniformity in the marking. No two of the ballots contained the mark in the square before the same candidate's name. From an examination of the ballots it quite readily appears that the marks were placed there by inadvertence or mistake, without any intention whatsoever of placing upon the ballot an identifying mark. It would indeed be difficult, if not impossible, for any one to identify any one of these seven ballots from the marks as we have observed them. This court in the case of Naramore v. Sprague, 48 S. D. 146, 202 N. W. 905, 906, quoted with approval an earlier statement of this court found in McMahon v. Polk, 10 S. D. 296, 73 N. W. 77, 47 L. R. A. 830, wherein the court said: " * * * 'The Legislature never intended to disfranchise a legal voter, who, in substantially complying with the mandatory requirements of the law, has, without an evil purpose, but by accident or inadvertence, made a blot or mark upon his ballot, which in no manner tends to distinguish the same, or divulge the secret within his breast.' * * * Unless, therefore, the ballot has been marked intentionally * * * the judges of election should presume that the marking was inadvertently done, and count the ballot."

■ We are satisfied that, applying the above rule to these seven ballots in question, the trial court did not err in counting these ballots as votes for appellant. It is further alleged that the court committed error in counting other ballots for respondent. We have carefully examined all of the ballots, and we are satisfied that, if there were error in the counting of any of these other ballots it was not prejudicial to the respondent for the reason that in each instance ballots of the same nature and of an equal num-

ber or more were counted by the court for respondent over appellant's objection. People ex rel Bledsoe v. Campbell, 138 Cal. 11, 70 P. 918; Van Winkle v. Crabtree, 34 Or. 462, 55 P. 831, 56 P. 74; Pardee v. Kuster, 15 Wyo. 368, 89 P. 572, 91 P. 836.

We are of the opinion, therefor that the decision of the trial court must be reversed. We are satisfied that no prejudicial error has been shown in the trial court's reception or rejection of ballots. It being our opinion that the illegality of the 22 ballots was not established by proof of noncompliance with the registry laws, the count of the trial court showing a majority of 2 in favor of appellant must stand.

The judgment and order appealed from are reversed, with directions to enter judgment in favor of appellant.

WARREN, P. J., and CAMPBELL, J., concur.
POLLEY and ROBERTS, JJ., dissent.

ROBERTS, J. (dissenting). Plaintiff, Milton Cameron, and defendant, Dana Babcock, were opposing candidates for the office of state's attorney of Roberts county at the 1934 general election. The canvassing board determined that each candidate had received an equal number of votes. A recount board appointed by the circuit court declared defendant Babcock elected by a majority of 2 votes. This proceeding was then instituted in the circuit court to contest the validity of such determination. Upon the trial of the cause the ballots cast at the election were counted by the court from which it determined that 2,977 votes had been cast for defendant, and 2,957 for plaintiff, and thereupon rendered judgment for defendant. From such judgment plaintiff has appealed.

It was found by the trial court that 22 persons who voted for Cameron were not duly registered, and did not produce affidavits as required by law in proof of their right to vote. There was no fraud or misconduct, and it is admitted that these persons were otherwise qualified voters in their respective precincts. The inquiry presented is whether the absence of their names from the registry lists rendered their votes illegal.

The statutes of this state provide that there shall be had biennially a registration of the qualified electors of the state; that the auditor of every city and the clerk of every incorporated town for each election precinct within a municipal corporation, the clerk

of every organized township and the county auditor for each precinct in that portion of the county not organized into civil townships shall make a registry of all of the electors residing therein; that it is the duty of such officer to enter in such lists the names of all persons residing in the precinct whose names appear in the poll list kept in the precinct at the last preceding election if they shall be known to, or can be ascertained by, such officer to be qualified electors of the precinct; that the officer shall enter therein in addition to the names on the poll lists the names of other persons who are well known to him to be electors in the precinct or shall be proved to be electors upon the sworn affidavit of the person applying or upon affidavit of some elector whose name has already been placed upon the poll list; and that any person residing in and entitled to vote in an election precinct is entitled to be heard by the registration officer at any time after October first next preceding the day of election and until the time the registration lists shall have been completed and certified to the judges of the election with reference to corrections or additions to the registry. Sections 7076, 7077, 7079, 7081, Rev. Code 1919, and chapter 144, Laws 1931. By section 7082 it is provided: "No vote shall be received at any election in the state if the name of the person offering the vote be not on such registry list unless such person shall furnish to the judges of election his affidavit, stating that he is an inhabitant of the precinct, giving his place of residence, the time he has resided therein and the reason why he was not registered; and also shall prove, by the affidavit of two registered electors, that they know such person to be an inhabitant of the precinct, giving his place of residence and the length of time he has resided therein."

When plaintiff rested his case, it appeared that he had a majority of 2 votes. Recognizing the rule that, where illegal votes are cast, the candidate who undertakes to purge the ballots of these votes must show for whom they voted defendant established that 22 unregistered voters cast their votes for plaintiff. Three of these unregistered voters, attempting to comply with the registry law, presented affidavits stating that they were citizens of the United States, that they had resided in the United States for 5 years, in the state 1 year, in the county 90 days, and 30 days in the election precinct. They presented no corroborating affidavits. Eight

of the 22 unregistered voters deposited their ballots without submitting proof. They appear to have voted in good faith and without knowledge that their names were not on the registry list. The other alleged illegal votes were rejected by reason of some defect in the proof submitted.

It is the contention of the defendant that the registry law was enacted for the purpose of preserving the integrity of elections; that this law which authorizes electors to examine the registry lists and propose corrections during the process of registry imposes a responsibility upon electors to comply strictly with its conditions and go to the polls prepared to answer its requirements that its purpose may be fully accomplished. Similar statutory provisions have been held to be mandatory, and votes cast in disregard of their provisions declared illegal. Fitzmaurice v. Willis, 20 N. D. 372, 127 N. W. 95; Cusick's Election, 136 Pa. 459, 20 A. 574, 10 L. R. A. 228. On the contrary, such statutes have been construed to be directory, and failure of observance of their provisions does not invalidate votes which have been received by election judges. Clark v. Robinson, 88 Ill. 498; Bryer v. Sevigney, 42 R. I. 187, 106 A. 155; Goodell v. Judith Basin Company, 70 Mont. 222, 224 P. 1110. See, also, Clayton v. Prince, 129 Minn. 118, 151 N. W. 911, Ann. Cas. 1916E, 407 DeBerry v. Nicholson, 102 N. C. 465, 9 S. E. 545, 11 Am. St. Rep. 767; People v. Wilson, 62 N. Y. 186; Attorney General v. Miller, 266 Mich. 127, 253 N. W. 241.

We need not determine the broad contention of defendant. It appears from the evidence that three unregistered electors presented insufficient affidavits upon which they were permitted to vote. Section 7082, Rev. Code 1919, not only requires that an unregistered voter furnish his own affidavit stating that he is an inhabitant of the precinct, giving his place of residence the time he has resided in the precinct and the reason why he has not registered but also requires that he establish such facts by the affidavit of two registered electors. The affidavits furnished did not substantially comply with these requirements. State ex rel O'Neill v. Trask, 135 Wis. 333, 115 N. W. 823; State v. Barnett, 182 Wis. 114, 195 N. W. 707. Conceding that a voter may assume and has no duty to determine from an inspection of a registry list that his name is properly registered and that his right of suffrage is not dependent upon a strict observance of the law by election officers, these elec-

tors were nevertheless derelict in their duty. See 9 R. C. L. 1093; note Ann. Cas. 1916E, 408. With knowledge that their names were not on the registry list, it was necessary that they furnish the proof required by statute of their right to vote. They had the opportunity to comply and were not deprived of a right to vote through the failure of election officers to perform their duty.

The terms of the statute are explicit, declare in imperative terms that the ballot of an unregistered voter shall not be received unless the required proof has been furnished, and fix penalties for swearing to statements in an affidavit furnished by an unregistered voter which are knowingly false. We do not believe that it was the intention of the Legislature that these provisions may be wholly ignored, and this court should not judicially repeal by construction this statute because it may inexpediently impose such a duty upon an unregistered voter. As stated in the opinion of this court in Jacobs v. Pyle, 52 S. D. 537, 219 N. W. 247, 250: "We fear that it too often happens that a subtle distinction between 'mandatory' and 'directory' is made for purposes of judicial legislation, whereby a court may, in substance, repeal a plain statutory provision which it deems unwise or inexpedient. Certainly such a practice carries 'interpretation' beyond due bounds. In the present case the words of the statute are unamibguous and the commonly mandatory form of the verb, 'shall,' is used."

Plaintiff contends that 74 other votes appearing from the evidence submitted by defendant to have been illegally cast should have been deducted from the total number of votes received by defendant. He relies upon the case of Briggs v. Ghrist, 28 S. D. 562, 134 N. W. 321, 324, wherein this court said: "We hold the law to be that, unless the party attacking the legality of the votes alleges and proves fraud upon the part of the election officials such as to warrant throwing out the whole vote of the precinct, the burden is upon him to prove for whom the illegal votes were cast; and, if he fails to make such proof, the illegal votes should be deducted from his vote, unless he satisfies the court that he could not, with the exercise of due diligence, show for whom the illegal votes were cast, in which case they should be deducted from the total votes of the several parties in the precinct and in the ratio of the total vote of each to the total of the precinct."

This court quotes in support of this rule from Napier v. Cornett, 68 S. W. 1076, 1077, 24 Ky. Law Rep. 576: "But the court applied the rule laid down in McCrary, Elect. § 495, in purging the returns of the illegal votes shown to have been thus cast, but as to which the testimony did not show for whom they were cast, by deducting them proportionately from both candidates, according to the entire vote returned for each. * * * After full consideration we have concluded that the rule laid down in McCrary is unsafe, and is not applicable to a case like this, where it is not shown to be impossible, by the use of due diligence, to show for whom the illegal votes were cast; and that is the only class of cases to which McCrary holds that rule should be applied. He says: 'Let it be understood that we are here referring to a case where it is found to be impossible by the use of due diligence to show for whom the illegal votes were cast. If in any given case it be shown that the proof was within the reach of the party whose duty it was to produce it, and that he neglected to produce it, then he may well be held answerable for his own neglect; and because it was his duty to show for whom the illegal votes were cast, and because he might, by the use of reasonable diligence, have made this showing, it may very properly be said that he should himself suffer the loss occasioned by deducting them from his own vote.' The presumption is in favor of the regularity and authenticity of the returns. The burden is upon the contestant to overcome that presumption. * * * We concur with Judge McCrary that 'the ordinary principle which requires the party holding the affirmative to prove the facts, and all the facts, necessary to make out his case, is the better rule, and that it will in all cases be safer to follow it.' The contestant had the burden, and that burden was only partially sustained by showing that illegal votes were cast. In order to make out his case, he must show for whom they were cast."

The Kentucky court had before it a ruling of the trial court deducting illegal votes proportionately from both candidates according to the entire vote returned for each when it did not appear that the candidate was unable to show for whom the illegal votes were cast. In the case of Childress v. Pinson, 100 S. W. 278, 282, 30 Ky. Law Rep. 767, after discussing its holding in Napier v. Cornett, supra, the court concluded: "It would, indeed, be a most

unwise and ruinous policy and unsound principle of law to require that, where a litigant alleged that illegal votes had been cast, if he failed to show that they had been cast against him, it would be presumed they had been cast for him. If this were the law, a litigant would be practically precluded from charging that illegal votes had been cast, for, if he knew in advance that if he failed to substantiate the charge it would work to his own injury, he could not afford to make such a charge, except in those cases in which he knew with positive certainty that he could establish the allegation. The proper rule—the fair and just rule—is that, where a fraudulent vote is shown to have been cast, it should be charged against the one for whom it is cast, if this can be established, and if it cannot be established, then it should not be charged to any one."

Under some circumstances, failure of the party having the burden of proof may give rise to such inference that the illegal votes were cast in his favor and justify a deduction of the illegal votes from the total number cast for him. If it appeared that they voted by reason of anything done by or for him, it might be inferred that he received such votes. We do not feel that the record in this case warrants the application of the rule which plaintiff seeks to invoke.

POLLEY, J., concurs.