**FRANCISCO DE LEON, et al., Appellants**

**v.**

**GEORGE M. BAMBA, et al., Appellees**

Civil No. 42-A

District Court of Guam

Appellate Division

August 21, 1963

*Counsel for Appellants:* RAMON V. DIAZ, and E. R. CRAIN
*Counsel for Appellees:* ARRIOLA, BOHN & GAYLE
*Counsel for Election*
 *Commissioner:* RICHARD D. MAGEE, *Deputy Attorney General;* FRED E. BORDALLO, *Assistant Attorney General*

## PER CURIAM

### OPINION

This is an appeal in an election contest. One of the Island Court judges supervised the recount and the other heard the case below. We constitute a quorum and our jurisdiction is provided by Section 2620 of the Government Code of Guam. The Guam election law is contained in such Code and our references are to such law unless otherwise indicated. No objections were made below to the pro-

cedure followed in instituting the contest and pursuing it. The trial court made extensive findings of fact and conclusions of law and held that certificates of election had properly been issued to the 21 members of the Guam Legislature who received the highest vote. The contestants brought these proceedings upon the assumption that there were so many irregularities involved in the 1962 general election that one or more losing candidates may have been elected.

The Guam election law is so comprehensive and detailed that some irregularities are almost inevitable. In some respects the law is contradictory and obscure. While we might wish that the Guam Legislature had enacted legislation better adapted for this community, we must take the law as we find it and hope that a better law will result. We consider the alleged errors in the order in which they were argued in the briefs of counsel, except that we first consider the dismissal of the Election Commissioner as a party defendant.

## DISMISSAL OF ELECTION COMMISSIONER

The Election Commissioner was first joined and then dismissed as a party defendant. The dismissal was proper as he should not have been joined as a party defendant. The only proper parties under Section 2600 are the persons who initiate the contest and the defendants who received the certificate of election. The trial court has ample authority under Section 2615 to find that a candidate other than the defendant has been elected and under Section 2616 to direct the Election Commissioner to issue a certificate of election as directed.

## ABSENTEE BALLOTS

The contestants contend that of 167 absentee ballots actually cast at the election, only 67 had previously been re-

ceived by the Election Commissioner and delivered by him to the precinct officials. We first note that the Election Commissioner did not comply with the appropriate statute. The voter is to be furnished with an envelope in which to place the completed ballot. Section 2461 requires that on the reverse side of the envelope there shall be *printed* the blank form of voter's affidavit. No such envelopes were furnished the voters but mimeographed blank forms were affixed to the reverse side of the envelope by tape or glue. Neither party has raised the question and we point it out simply to indicate the safeguards contained in the election law. The printing is required in order to eliminate the possibility that any voter's affidavit could be switched from one envelope to another containing a different ballot from that voted.

The law concerning absentee ballots, when properly construed, provides different methods for obtaining absentee ballots and voting the same. The voter must expect to be off the island or must expect to be unable to go to the polls if on the island. He must request an application blank within 120 days prior to the election, and must make application on the required form not more than 60 nor less than 5 days prior to election according to Sections 2452 and 2453. A ballot is either mailed to him or, under Section 2459, within 15 days of the election he may obtain a ballot by applying on the proper form at the office of the Election Commissioner and mark it, swear to it and return it to the Election Commissioner. The Commissioner must deliver all absentee ballots received by him to the precinct board, together with the voter's application, Section 2467, before the election and he must do this in person. He must report all absentee ballots not received by him for delivery to the precinct officials before the polls close, Section 2469.

It appears that on election day disabled voters were allowed to make affidavits for absentee ballots, that such

147

ballots were marked in the presence of precinct election officials who left the polling places for this purpose, accompanied by a representative or representatives of each of the two political parties taking part in the election, and that such ballots were voted. There is no evidence that any of these were challenged at that time, in accordance with Section 2477. The defendants contend that this procedure is authorized by Section 2464 which authorizes the absentee voter at any time on or before the day of an election to appear before one of the officers mentioned therein and mark his ballot. While admitting that these provisions are inconsistent with other provisions in the election law, the defendants contend that the courts should construe the law to afford the voter who could not anticipate his disability on election day the opportunity to vote. The law makes no provision for this contingency. Section 2464(b) provides that the absentee voter may only receive an absentee ballot when he "expects" to be prevented from personally going to the polls. This contemplates that the Election Commissioner must anticipate the return of the ballot to protect it and to deliver it to the precinct officials. Presumably the Election Commissioner may deliver ballots received late, Section 2469, before the polls close, but he has no authority to accept applications for ballots on election day. All such absentee ballots which were applied for and issued on election day and voted are illegal.

Contestants' Exhibits 7A and 7B are envelopes which had contained accepted ballots. It is conceded in the briefs that one was sworn to before the registrar of a school and the other before the secretary of the District Administrator at Majuro, Trust Territory of the Pacific Islands. We do not take judicial notice of foreign law but it does not appear that the registrar of a school is authorized to administer oaths and the Trust Territory is not a state, territory or municipality within the United States. We again

148

point out that we have no authority to construe a statute so liberally in favor of the voter as to substitute entirely different safeguards for those provided in it. These ballots were improperly cast.

## VOTERS' IDENTIFYING MARKS

■ A number of ballots were introduced in evidence which contained markings other than those authorized. Section 2390 provides that a voter shall not place any mark upon his ballot by which it may afterwards be identified as the one voted by him. The trial court rejected some of these and accepted others. In doing so, the court followed the general rule of liberal construction indicated by Section 2519. There may be some doubt as to whether, in rejecting some of these ballots, the court was as liberal toward the voters as is intended by Section 2522, which provides as follows:

"Sec. 2522. Unauthorized marks on ballot. No mark upon a ballot which is unauthorized by this title invalidates a ballot, unless it appears that the mark was placed there by the voter for the purpose of identifying the ballot."

The court in such a situation, however, is faced with a difficult decision on very meager evidence as to the intent of the voters. While it is possible that we might differ as to the effect of the markings on individual ballots, particularly as there were so few of them as to make any deliberate improper intent unlikely, we must follow the trial court where, as here, we recognize there is ample room for a difference of opinion.

## OTHER IRREGULARITIES

There are many other irregularities on the part of the election officials which do not involve the integrity of the voters. Such officials are required by the election manual to

have the voters sign a roster before receiving a ballot. It was shown that in one precinct the voters' names were marked off and in another that one person signed for all voters. This is another example of unnecessary safeguards thrown around the election. In this community it is highly improbable that a fraudulent voter could present himself to election officials without being discovered and no such fraud was shown by the contestants. We must clearly distinguish between irregularities which are the fault of the voter and those which are the fault of election officials.

## SUMMARY OF FACTS

According to Exhibit 37, the results found by the trial court, the 21 candidates of one party received a total of 117,480 votes and the 21 candidates of the other party a total of 107,728 votes. The individual who received the highest vote had 5,798 votes among the candidates of the winning party and the highest vote for the losing party was 5,359. The lowest vote for a successful candidate was 5,362. We surmise that irregularities took place in other elections but that the results were not sufficiently close to warrant a contest. There is no evidence of fraud or collusion to aid or hinder any candidate, nor is there any evidence of a pattern for identifying ballots by any particular method. There is no indication that any one voted who did not have a right to provided he or she had done it in the proper manner and at the proper time. Of the total number of ballots voted there may be about 100 illegal ballots, or less than one percent. Neither this court, nor any other court, can determine whether the elimination of illegal ballots would have changed the results. Furthermore, it would not only appear that both political parties acquiesced in the acceptance of most of these illegal ballots, but it is clear that the workers of both parties actively cooperated in obtaining at least some of them.

150

# THE LAW

There are four points of law which it seems to us most important to consider in this case.

 1. In the first place the Guam Election Law does not appear to us to be really as ambiguous as counsel have claimed. It is true there are a number of inconsistencies between the literal wording and implications of certain of the sections and those of others, but this is likely to be true in any lengthy and detailed legislation dealing with a number of situations. It is the duty of all concerned to make a reasonable effort to reconcile such statements and ascertain the real substance of the legislative will. In doing this one of the most widely recognized principles is that the more specific provisions shall control over general ones or the implications that might otherwise be drawn from the general provisions, 50 Am.Jur., Section 367. If this principle is kept clearly in mind, many of the ambiguities alleged by counsel should give no one serious trouble. It is on this basis that we believe the absentee ballots issued on election day must be held to have been illegal.

 2. It should be borne in mind that, according to the great weight of authority, there is a sharp distinction between the effect to be given provisions of an election law if enforcement is sought before the election and the effect to be given after the election. Before the election practically all the provisions will be considered as mandatory and all concerned should make an honest effort to comply with them; but after the election all will ordinarily, in the absence of any express statutory provision to the contrary, be held directory only, in support of the result, unless the variations from them are such as to interfere either with the honest expression of opinion of the electorate or with the honest ascertainment of the result. The crucial question at that point is one of fairness and honesty. The great inter-

151

est of the public in avoiding the expense and inconvenience of a new election and fairness to those who have lawfully voted require that the will of the electorate shall not be thwarted or delayed by mere honest misunderstandings or inadvertent errors of the election officials or others which do not indicate any fraud or any intention to improperly aid or hinder any candidate, 18 Am.Jur., Elections, Sections 11 and 225; *Cameron v. Babcock* (S.D. 1935) 262 N.W. 80, 101 A.L.R. 650. This principle makes what we have referred to as "other irregularities" above, of no consequence in the present case.

3. Now we come to the troublesome question of how the situation should be handled when illegal votes have been cast in good faith, without any fraud or collusion, in sufficient number to possibly affect the result of the election, but it is not known for whom the votes were cast.

The trial court and, before that, the judge supervising the recount, attempted in certain instances, to offset an unidentified illegal ballot by withdrawing a ballot from the precinct ballot box and deducting the votes therein from the totals of the candidates for whom the vote was cast, apparently by analogy to the situation covered by Section 2505, but we find no warrant for this procedure in either the election law or the decisions that have come to our attention. There appears to be only one instance in which a ballot properly cast can be removed from the ballot box in any such manner. Section 2505 provides that if the number of ballots in the box exceeds the number of names on the tally list, the excess number of ballots shall be withdrawn and destroyed by the precinct judge. It does not appear that this procedure affected the result, and it may therefore be disregarded as harmless error. Since, however, we hold that the unidentified absentee ballots issued on election day were also illegal, it is still important to determine how they should be treated.

152

Different jurisdictions within the United States have adopted different rules on this matter. A few would either void the whole election or void the election in the precinct or district in which such votes were cast, if they were confined to one district. The majority, however, hold that in such a situation the contestant has the burden of proving for whom the illegal votes were cast and that these would affect the result—in the sense of who won, and not merely changing the margin of victory—that, if the contestant does not sustain this burden, he must fail, and that the proper course is then to prorate the improper ballots in proportion to the votes cast for each candidate or to ignore the fact that illegal votes have been cast, viz. 155 A.L.R. 677; *In re Sugar Creek Local School District* (Ohio 1962), 185 N.E.2d 809:

"If the legality of the votes cast is attacked upon grounds not affecting the vote of the entire precinct, it must be proved for whom the illegal votes were cast; and where it is not possible for either party to prove how the alleged illegal votes affected the result, the contestants having the burden of proof must fail." 18 Am.Jur., Elections, Section 303.

In the Sugar Creek case the court made an extensive review of the decisions in other states as to whether and when the rule to be applied is that the contestant must prove for whom the illegal votes were cast and that they would affect who won, or is that it is sufficient to void the election if the contestant merely proves there were illegal votes cast in sufficient number so that they might affect who won. In the course of this review the court stated at page 819:

"In the following states both rules are applied: California, Colorado, Georgia, Illinois, Louisiana, Michigan, Minnesota, Nebraska, North Carolina, New Jersey, Oklahoma, Pennsylvania and Tennessee. If the irregularities are great and flagrant, the election is voided, if they are found not to be great and flagrant, even though there was uncertainty as a result, the contestant was held to prove the illegal votes and for whom they were cast."

153

Then at page 820 the court summarized the situation as follows:

"Thus, it will be seen out of 33 states directly passing upon this issue, nine require that a contestant shall prove his case as in any other case, including the actual vote; four held that it is only necessary in any circumstances to prove the illegal vote and the uncertainty of the election; and twenty apply both rules according to the facts in the case before them—the distinguishing mark being whether there was fraud or whether the irregularities are great or flagrant."

In our present case, we believe that the irregularities, though participated in by many, cannot properly be considered either "great *or* flagrant" as those words are used by the courts in this connection and certainly not "great *and* flagrant" which are the words used in stating this dividing line in the first of the above quotations. "Flagrant" here, we take to connote a bad intent and to be used in the sense defined in Webster's New International Dictionary, Second Edition, as "Flaming into notice; notorious; enormous, heinous; glaringly wicked; as a flagrant error, traitor."

█ Section 2602 provides that no irregularity or improper conduct by the precinct election board shall void an election result unless this resulted in a defendant being declared either elected or tied for election; and Section 2603 provides that an election shall not be set aside on account of illegal votes unless it appears that such number of illegal votes has been given to the person whose right to the office is contested, or who has been certified as having tied for first place, which if taken from him, would reduce the number of his legal votes below the number of votes given to some other person for the same office, after deducting therefrom the illegal votes which may be shown to have been given to such other person. This is at least consistent with, if it does not require, placing upon the contestants the

154

burden of proving who the unidentified illegal votes were for under the circumstances here disclosed. These unidentified illegal absentee ballots seem to have been so generally accepted in different precincts that we believe any prorating of them would have to be on the basis of each candidate's total vote and not by precincts. Therefore, it makes no practical difference whether they are prorated or the fact of their illegality is simply disregarded, viz. *Russell v. McDowell* (1890) 83 Cal. 70, 23 P. 183, where prorating on the basis of the entire vote was used.

We therefore hold that the contestants have not sustained their burden of proof and that the complaint was properly dismissed.

4. While we base our decision on the above, we feel we should also call attention to the fact that by their failure to challenge the illegal "local" absentee votes in accordance with Section 2477 when they were cast and by the participation of the Territorial Party's workers in obtaining some of them, the contestants may well have been estopped to object to them, *In re Sugar Creek Local School District*, supra; 18 Am.Jur., Elections, Section 280.

## CONCLUSION

We conclude that the contestants have not shown that the defendants, or any of them, were improperly elected.

The judgment appealed from is affirmed.