WARD et al., Appellants, v. FLETCHER et al., Respondents.

(153 N. W. 962.)

(File No. 3848.  Opinion filed August 8, 1915.  Rehearing denied.)

1. **Elections—Contest—Appeals—Review—Ballot Markings—Appellants' and Respondents' Exceptions—All Errors Considered, When—Statute.**

Under Pol. Code, Sec. 1997, providing for a speedy hearing upon appeal in an election contest, and for hearing and determination in a summary manner; the questions involved relating to rulings below as to effect of ballot markings, and both parties having presented exceptions upon which they, respectively, complain, the Supreme Court will, so far as necessary to determine correctness of the judgment appealed from, pass upon all alleged errors to which its attention is called by either side, since, if from the whole record it is clear that such judgment is correct, all errors, if any, in such rulings were without prejudice to appellants.

2. **Same—Ballots—Indication of Voter's Intent—Identifying Marks —Presumptions—Statute.**

Under Pol. Code, Sec. 1916, providing that the judges, in counting the votes, shall endeavor to record the intention of the voter, and Sec. 1923, providing that no elector shall place any identifying marks upon his ballot, held, that courts and election judges should strive to determine and carry out the elector's intent when satisfied that he has endeavored to express such intent in manner prescribed by law or by directions on the ballot, and should presume every marking found where the X should be to be a marking intended as an X, unless the contrary is clear, but cannot refer, for assistance in determining such intent, to any mark, whether it be an X or not, made thereon at an unauthorized place; and, where it appears that a mark was intentionally made by the voter at an unauthorized place, it should be held to be an identifying mark; but it is not the province of the courts, or the election judges, to determine whether the elector actually intended such a mark to be an identification mark; and it was error in trial court to count as a vote a ballot by attempting to determine the voter's intention regardless of how such intention was indicated, or to refuse to regard a ballot marking as an identification mark, unless it clearly appears that the voter so intended it, or regardless of markings intentionally placed there by him without authority of law.

3. **Same—Liquor License Election—Ballots—Sundry Indications of Voters' Choice, and of Illegal Voting—The "X" as Related to Squares, and Over "Yes" or "No"—Statute.**

Under such provisions, and where the ballot in an election to determine whether intoxicating liquors should be sold at retail embraced such question at the top, with instructions that the voter should mark a cross (X) in the square at the left of the word "Yes," or a cross (X) in the square at the left of the word "No," held, that ballots marked with an X on the word "No," with no other markings, ballots marked with an X on the word "No" and an X in the square preceding the word "No," a ballot properly marked in the square, but with the word "nozer" written in lead pencil below the word "Shall," ballots with the X on the word "Yes" and also in the square to the left of the word, a ballot with two X's stamped above the printed question, a ballot having the X marked properly with a lead pencil and to the left and outside the square the figure "10," ballots having in the square before the word "Yes" a mark in pencil in no wise resembling an X, a ballot having a row of four X's, one in the square at the left of the word "No," one to the left of the first and partly within and partly without the square, the others still further to the left and entirely without the square, ballots with X's on the word "Yes," ballots with the X on the word "Yes" and also in the square at left of that word, a ballot marked with an X in the square before the word "Yes," and also having in the square the written letter "Y," a ballot with an X stamped above the letter "l" in the word "Official," a ballot having an X so placed that its junction was on the line between the two squares, and a ballot marked with a red lead pencil with a straight line to left of the word "Official," were not legally marked and were improperly counted. **Held,** further, that ballots with more than one X in the square in front of the word "Yes," were properly counted in the affirmative, since, while such markings are not commended, being two crosses within the square, or cases where the marking is more or less blurred, yet the voter's intent to make a cross within the square is clear; that a ballot, counted in the negative, having two X's, one in center of the square at left of word "No," the other to left of the first and partly without the square, was properly counted, since, if either X stood alone, it would be a proper marking, and, there being nothing peculiar or suspicious leading to belief that either X was intended for an identification mark, it should not be held such a mark; that a ballot marked with official stamp in square in front of word "No," which mark at first glance appears to be but a straight line, but upon careful examination reveals a trace of the lines of the cross, was improperly rejected; and that a ballot properly marked on its face, but having a star made by a lead pencil on its back which, from suffi-

cient evidence appearing, was not made by the voter, shou'd have been counted.

Appeal from the Circuit Court, Brown County. Hon. THOMAS L. BOUCK, Judge.

Election contest by A. L. Ward and others, against C. C. Fletcher and others, members of the Board of Commissioners of the City of Aberdeen, Brown County, S. D., Ed. M. Hall, Mayor, and H. C. Behrens, member of the Board of Commissioners; involving the question whether intoxicating liquors should be sold at retail. From a judgment for contestees, contestants appeal. Affirmed.

*E. B. Hankin,* and *Frank McNulty,* for Appellants.

*Crofoot & Ryan,* and *Campbell & Walton,* for Respondents.

(1) Under point one of the opinion, Respondent cited: First Nat. Bank of Marshalltown vs. Wright, (Ia.) 50 N. W. 23; Voorhees v. Arnold, (Ia.) 78 N. W. 795; Prenevost v. Delorme, (Minn.) 152 N. W. 758; Sec. 1, Ch. 178, Laws 1913; French v. State Savings Bank of Ortley, (S. D.) 151 N. W. 286; People v. Board et al., 121 N. Y. Supp. 365.

(2) Under point two of the opinion, Appellants cited: Tschetter v. Ray, 28 S. D. 608; Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 501; Section 1916, Rev. Pol. Code, as amended by Chapter 198, Laws 1913.

Respondents cited: Pol. Code, Secs. 1916, 1929; State ex rel Crain v. Acker, 142 Wis. 394, 125 N. W. 952; State v. Sadler, (Nev.) 58 Pac. 284; State v. Peter, (Wash.) 57 Pac. 814; Mauck v. Brown, (Neb.) 81 N. W. 313; Section 1911, Pol. Code; Chap. 154, Laws 1913.

(3) Under point three of the opinion, Appellants cited: Pol. Code, Sec. 2856; Laws 1913, Ch. 254; Treat v. Morris, 25 S. D. 615, 622; Moody v. Davis, 13 S. D. 86; Vallier v. Brakke, 7 S. D. 343; McKittrick v. Pardee, 8 S. D. 39; McMahon v. Polk, 10 S. D. 296; Church v. Walker, 10 S. D. 95; Parmley v. Healy, 7 S. D. 401; Sec. 1923, Pol. Code.

Respondents cited: State ex rel Chilson v. Harris, 115 N. W. 533; Briggs v. Ghrist, 134 N. W. 321; Treat v. Morris, 127 N. W. 554; State v. Fawcett, (Wash.) 49 Pac. 346; Parmley v. Healy, (S. D.) 64 N. W. 186; Elwell v. Comstock, (Minn.)

109 N. W. 698; Vallier v. Brakke, 64 N. W. 180; Hearst, 96 N. Y. S. 119.

WHITING, J.   Contestants and appellants, proceeding under article 13, c. 19, Pol. Code, contested, in the circuit court, the result of a certain city election as declared by the board of canvassers.   The judgment of such court being adverse to them, they have appealed therefrom to this court.   The election in question was held to determine whether intoxicating liquors should be sold at retail in such city.

[1] Section 1997, Pol. Code, being one section of article 13, c. 19, supra, provides for a speedy hearing upon appeal and that the cause "shall be heard and determined in a summary manner." The only questions presented relate to alleged errors of the trial court in its rulings as to the effect of the markings found upon certain ballots cast at such election.   Appellants, by clear and sufficient assignments of error, have presented those rulings of the trial court of which they complain, and respondents have set forth numerous rulings of the trial court to which they took exceptions and of which they now complain.   We believe that on an appeal of this nature we should, so far as necessary to the determination of the correctness of the judgment appealed from, pass upon all alleged errors to which our attention is called by either side, because if, from the whole record, it is clear that the judgment of the trial court is correct, all errors, if any, in the rulings of the trial court, were without prejudice to appellants.   Voorhees v. Arnold, 108 Iowa, 77, 78 N. W. 795; Prenevost v. Delorme, (Minn.) 152 N. W. 758.

[2] Before taking up the various ballots referred to by the parties, it is well to consider the principles that should govern canvassing officers and courts in determining whether a ballot should be counted and how it should be counted.   Section 1916, Pol. Code, provides:

"The judges in counting the votes shall endeavor to record the intention of the voter."

Section 1923, Pol. Code, provides:

"No. elector shall place any mark upon his ballot by which it may afterwards be identified as the one voted by him."

An examination of the record herein convinces us that the trial court was of the opinion: first, that a ballot should be count-

ed as a vote if from such ballot the intention of the voter can be determined, regardless of how such intention was indicated; second, that no mark upon a ballot should be held to be an identification mark unless it clearly appears that it was intended as such by the elector who cast the ballot, and this regardless of the fact that there might be markings upon the ballot which were intentionally placed thereon by the elector and were so placed without authority of law. These positions find no support whatever in any decision of this court and are contrary to the settled law of this state. As early as the decision in Vallier v. Brakke, 7 S. D. 343, 64 N. W. 180, decided 20 years ago, this court said:

"There was much discussion on the argument and in the briefs of counsel as to the duty of judges of election and courts to carry out the intention of the voter. This is true to a certain extent; but, as the Legislature has required the elector to express his intention by certain well-defined markings upon his ballot, his intention must be determined by these markings, and not by the uncertain and undefined ideas of the judges of election, or by the courts, as to his intention. The Legislature has clearly and precisely defined the manner in which the elector may designate the candidates for whom he desires to vote, and has prescribed definite and fixed rules to govern the voter in designating such candidates. As before stated, the system is simple, and there is no difficulty in the elector's complying with the rules. In our view, it is neither the duty of judges of election nor the courts to fritter away the benefits of the system by strained efforts to get at the intention of the voter in any manner other than by following the rules prescribed by the Legislature. If the elector does not take interest enough in his vote to follow these simple and easily understood rules, he can complain of no one if his vote is not counted. A system so simple and plain, and which can be comprehended by any elector of ordinary intelligence in a few minutes, must be followed. There can be no excuse for not following it."

In Treat v. Morris, 25 S. D. 615, 127 N. W. 554, which was also a case where a question of sale of intoxicating liquor was voted on, and voted at a time and under circumstances making lawful a marking either upon the word "Yes" or "No" or in the square before one of such words, this court said:

"It has heretofore been held by this court, on several oc-

casions, as well as in many other jurisdictions, that the voter's intention, as comprehended within the meaning of such sections of the statute, is an intention to mark his ballot according to law, and is not an intention to vote for any particular person, or in any particular way on any question submitted to vote. The law provides how the elector shall express his intention by the marking of his ballot. Where an elector deliberately marks his ballot some other way than required by law, although his intention might be gathered therefrom as to how he intended to vote, still his vote should not be counted because he has not attempted to mark his ballot in the manner the statutes says he must. Where an elector has attempted to make the word 'Yes' or 'No,' or attempted to place a cross in the circle, and by reason of a defect in the stamp or pencil, not properly making a clear cross, or some like occurrence, then there in an intention to mark the ballot in accordance with the method prescribed by statute, and under such circumstances it should be counted, if it can be gathered from the ballot how he intended to vote; but where he actually makes the cross on some other part of the ballot, other than where the law says he should make it, the vote should not be counted."

In Church v. Walker, 10 S. D. 90, 72 N. W. 101, decided in 1897, this court said:

"If the cross outside the circle was made by mistake, the elector should have procured another ballot. On failure to do so the judges of election should have presumed it was made as an identifying mark, and should have declined to count the ballot for any candidate."

Courts and election judges should strive to determine and carry out the intent of the elector when satisfied that the elector has endeavored to express such intent in the manner prescribed by law or by directions found upon the ballot, and for that purpose, should presume every marking found where the X should be to be a marking intended as a X unless the contrary is clear. Upon the other hand, no mark, whether it be a X or not, which has been made upon a ballot at an unauthorized place, can properly be referred to to assist in determining the intent of the voter; and, where it appears that a mark was intentionally made by the voter at an unauthorized place, it should be held to be an

identifying mark. It is not the province of the courts or the election judges to determine whether the elector actually intended such a mark to be an identification mark. A strict adherence to these rules will tend to insure the purity of our elections. In the present case each ballot had upon its face clear and explicit instructions as to how the elector should express his intent. Such instructions conformed to the provisions of the statute. The ballots, including such instructions, were as follows:

Official Ballot.

Question Submitted.

| | Yes | "Shall intoxicating liquors be sold at retail?" |
|---|---|---|
| | No. | |

Instructions.

Any voter in favor of the sale of such liquors as aforesaid shall mark a cross (X) in the square at the left of the word "Yes." Any voter opposed to such sale shall mark a cross (X) in the square at the left of the word "No."

Certainly no elector who failed to follow such instructions and to thus comply with the law can complain if his ballot is not counted as a vote, and other electors have no more cause to complain because such ballot is not counted than they have to complain because some other elector failed to go to the polls and vote.

[3] With these propositions in mind we will proceed to consider the several rulings complained of. Appellants complain of the courts rulings in counting as votes in the negative 49 ballots. For the purposes of argument some of the ballots are by appellants placed in groups. In the first group there are properly 34 ballots. These ballots are each marked with a X *on* the word "No," and with no other marking. These ballots should not have been counted. At the time of this election there was no law authorizing such marking. Furthermore, unless such a marking were made in compliance with some law or instructions directing the placing of a X on the word "No" to indicate a vote in the

negative, the election judges and the courts would be bound to hold that the effect of so placing the X was to erase the word "No," thus indicating an intent to vote in the affirmative, which intent, being indicated in a manner not authorized by law, could not be carried out by such judges or courts. In the second group there are 10 ballots. These ballots are each marked with a X on the word "No" and a X in the square preceding the word "No." These should not have been counted as votes: First, because the X on the word "No" erases such word, and would indicate, though improperly, an intent to vote in the affirmative; second, because the voter has intentionally placed a mark where, under the law and the instructions on the ballot, he was without authority to place it, and by which he might be able to identify his ballot. Appellants complain of a ruling holding, as a vote in the negative, a ballot having a row of four X's, one in the square at the left of the word "No," one to the left of the first and partly within and partly without such square, the others still further to the left and entirely without such square. At least two X's were intentionally placed where the law did not authorize them to be placed, and should have been held to have been identification marks. Another ballot counted as a vote in the negative was properly marked in the square, and also had the word "nozer" written in lead pencil beneath the word "Shall." This ballot was wrongfully counted. Another ballot counted in the negative had two X's, one in the center of the square at the left of the word "No," the other to the left of the first and partly within and partly without such square. This vote was properly counted. While the law only requires one X to be placed in the square, yet, if either of such X's stood alone, it would be deemed a proper marking of the ballot, and, there being nothing peculiar or suspicious leading one to believe that there was any intention that either of such X's should be an identification mark, it should not be held such a mark; such marking is clearly distinguishable from a marking intentionally made in an unauthorized place. What we have said in relation to the last ballot also covers another ballot counted in the negative. Another ballot counted in the negative was one properly marked on its face, but having a star made by a lead pencil on its back. The trial court has not indicated the ground for its

ruling, but we presume that it must have found that this mark was not made by the elector who cast the ballot. From the whole record we think there was sufficient evidence to justify the trial court in concluding that this mark was not on the ballot when such ballot was delivered to the election judges. There were therefore 46 ballots counted as votes in the negative which should not have been counted either way.

It is undisputed that there are 23 ballots exactly like the first group above mentioned, excepting that the X's were on the word "Yes." There are also 6 ballots exactly like the second group above mentioned, excepting that the X's were on the word "Yes" and in the square to the left of such word. The above 29 ballots should not have been counted as votes. Respondents complain of 7 ballots which are marked with more than one X in the square in front of the words "Yes." Six of these (Exhibits H-11, K-65, K-54, J-18, J-22, and J-24) were properly counted in the affirmative, because, while the markings thereon are not to be commended, being two crosses within the square or cases where the marking is more or less blurred, yet the intent of the voter to make a cross within the proper square is perfectly clear. The other (Exhibit E-3) was improperly counted; it had two X's stamped above the printed question. The trial court improperly counted, as a vote in favor of the affirmative, one ballot (Exhibit E-2) having the X marked properly with lead pencil, and to the left and outside of the squares the figure "10" marked with apparently the same lead pencil. The trial court improperly counted, as votes in favor of the affirmative, two ballots (Exhibit E-7 and Exhibit E-8) each having, in the square before the word "Yes," a mark in no manner resembling a X. These marks were made with pencil, and clearly show that neither elector was attempting to make a X. The trial court improperly counted, as a vote in favor of the affirmative, a ballot (Exhibit J-20) marked with a X in the square before the word "Yes," but also having in said square the written letter "Y." The trial court improperly counted, as a vote in the affirmative, a ballot (Exhibit K-59) having a X stamped with the official stamp above the letter "l" in the word "official." The trial court improperly counted, as a vote in the affirmative, a ballot (Exhibit C-24) having the X so placed that the junction of the X was exactly on the line be-

tween the two squares before the words "Yes," and "No." The trial court improperly counted, as a vote in the affirmative, a ballot (Exhibit K-63) marked with a red lead pencil by a cross in a proper place and by a straight line to the left of the word "Official." The trial court improperly refused to count, as a vote in the negative, a ballot (Exhibit E-35) marked in the square in front of the word "No." The mark was made with the official stamp. At first glace it appears to be but a straight line, but a careful examination reveals a trace of the lines of the cross, and it is clear that the elector made the mark with the stamp, but by pressing down upon one edge of such stamp. The elector has endeavored to express his intention in the manner provided by law. The trial court counted as votes in favor of the affirmative ballots Exhibits 22, 23, and 24. It is very doubtful whether either of these ballots should have been counted, as it is hard to determine from either of such ballots whether the voter was trying to comply with the provisions of law. To reject these ballots would not change the result of the election, so we refrain from passing on same. As supporting the above holdings, see cases cited in notes 47 L. R. A. 806-844. There are therefore 37 ballots improperly counted as votes in the affirmative, and one ballot not counted which should have been counted as a vote in the negative. The total negative vote as found by the trial court should be reduced 45 votes, and the total affirmative vote so found should be reduced 37 votes, making a net change in favor of the affirmative of 8 votes. The trial court having found that there was a majority of 9 votes in the negative, it follows that, under our views, there is a majority of one vote in the negative.

The judgment of the trial court is affirmed.

