SMILEY, Respondent, v. ARMSTRONG, Appellant

(278 N. W. 21.)

(File No. 8106. Opinion filed February 25, 1938.)

*J. M. Armstrong,* of Belle Fourche, pro se.

*R. A. Smiley,* pro se., and *L. M. Simons,* both of Belle Fourche, for Respondent.

ROBERTS, P.J. At the general election in November, 1936, the plaintiff, R. A. Smiley, and defendant, J. M. Armstrong, were rival candidates for the office of state's attorney of Butte county.

The canvassing board, having determined that defendant had received a greater number of votes, issued to him a certificate of election. This proceeding was then instituted in the circuit court. Upon a recount of the ballots cast at the election the trial court found that 1,304 votes had been cast for the plaintiff and 1,301 for the defendant, and by judgment the former was declared elected. From this judgment defendant has appealed.

Defendant on this appeal contends that the court erred in rejecting from the count five ballots which should have been counted for him and in counting for the plaintiff six ballots that should have been rejected. Exceptions to rulings of the court upon the validity of other ballots were made by plaintiff. The ballots thus excepted to by the parties have been brought before this court for inspection and consideration, and the only questions presented are as to the rulings of the trial court on the validity of these disputed ballots.

■ Ballot, Exhibit CI, is a rejected ballot which is marked with a green pencil. Section 7241, as amended by chapter 160, Laws 1925, provides that the voters shall use a pencil to mark his ballot, and no pen, stamp, or other instrument than a pencil shall be used. This statute relating to the general election does not specify the kind of pencil to be used as does the primary election law, which requires the marking of a ballot "with a plain lead pencil." Section 29, chapter 118, Laws 1929. It is claimed that the cross drawn with the colored pencil constituted a distinguishing mark. As the statute does not specify the color of the pencil with which a ballot shall be marked, we conclude that the court erred in rejecting this ballot. If a voter uses an instrument permitted by statute to mark his ballot, the ballot is valid unless it otherwise appears that it was marked for the purpose of distinguishing or identifying it.

■ Ballots identified as Exhibits 6E, 13H, and 14D, cast for defendant, were rejected by the court below because of erasures on each of these ballots apparently made by the voter in attempting to correct an error in marking. The trial court also rejected ballot, Exhibit 3A, cast for plaintiff. This ballot has a cross in the square before the name of a candidate and the square is filled with pencil marks covering the square. It is claimed by

plaintiff that it appears from the face of this ballot that the cross over which the pencil marks appear was made by mistake, and that the voter attempted to mark out the cross as indicated. Defendant contends that where an erasure does not show an attempt to make a distinguishing mark, and is so slight as not to be easily discernible, a ballot so marked is not void. But our decisions appear to have settled the rule otherwise, and such construction has long been acquiesced in. This court held that the provisions of section 1922, Pol. Code 1903, section 7272, Rev. Code 1919, which provided that if a voter spoiled a ballot he should return such ballot and obtain another, required a ballot to be rejected if there were erasures or obliterations made by the voter; that the voter was not permitted to correct the ballot himself, but must proceed in the manner provided by statute. Woodruff v. Heltibridle, 37 S. D. 35, 156 N. W. 579; Dunn v. Gamble, 47 S. D. 303, 198 N. W. 821; see, also, Briggs v. Ghrist, 28 S. D. 562, 134 N. W. 321. The Supreme Court of California in People v. Campbell 138 Cal. 11, 70 P. 918, placed the same interpretation upon similar statutory provisions. The Legislature of that state subsequently amended the election law relating to marked and spoiled ballots to prevent the rejection of ballots unless it shall appear that a distinguishing mark was placed thereon intentionally by the voter. Turner v. Wilson, 171 Cal. 600, 154 P. 2; Sweetser v. Pacheco, 172 Cal. 137, 155 P. 639.

It appears from an examination of the provisions of section 7272, Rev. Code 1919, that the provisions of section 1922, Pol. Code 1903, were re-enacted without change. There is a presumption of intention to adopt the construction as well as the language of the prior enactment. 25 R. C. L. 1075; R. C. L. Sup., title Statutes, § 297. This court has held that a similar principle applies where a statute is patterned after legislation of another state which has been judicially construed there prior to its enactment in this state. See Melby v. Anderson, 64. S. D. 249, 266 N. W. 135, and cases cited. Conceding that the prior construction may not be binding upon us, nevertheless, we should not depart from such construction in the absence of cogent reasons. We discover no such reasons, and, adhering to the prior construction of the statute, hold that the ballots in question were properly rejected by the trial court.

■ Ballot, Exhibit 13D, marked for the plaintiff, and ballot, Exhibit 23S, marked for the defendant, were improperly counted. Each of these ballots contain in a square before the name of a candidate a partially-erased diagonal line. We think for reasons stated that these ballots should have been rejected.

■ The trial court counted over objections of the defendant ballots identified as Exhibits 14J, 23E, and 20G. These ballots were objected to upon the ground that, inasmuch as the designs used by the voters in the expression of their choice do not conform to that provided by statute, they are marked in contravention to the provisions of sections 7264 and 7277, Rev. Code 1919, providing the method for marking ballots, and that no ballot shall be counted except those voted in accordance with these provisions. It appears from the record that these alleged errors urged by defendant are counterbalanced by the counting of ballots identified as Exhibits 20D, 11C, and 20C, similarly marked, over objections of the plaintiff. If the court erroneously rejected these ballots in favor of the defendant, it was not prejudicial. Cameron v. Babcock, 63 S. D. 554, 262 N. W. 80, 101 A. L. R. 650.

■ Ballot, Exhibit 23D, is marked in the Democratic Party circle by three straight lines. The only objection to the counting of this ballot appears to have been the additional line drawn through the cross near the center of the circle. We are of the opinion that this does not constitute a sufficient reason for rejecting the ballot. By section 7264, Revised Code 1919, the voter is required to mark his vote by an "X" mark. The marking on this ballot substantially complies with the statute. Vallier v. Brakke, 7 S. D. 343, 64 N. W. 180.

The court below counted ballot, Exhibit 21B, cast for the plaintiff. There is an additional line drawn through the cross in the Republican Party circle; one line of the cross is paralleled by a third distinct line. The court counted in favor of the defendant ballots, Exhibits 19I and 23R, similarly marked. If the court erred in its ruling on the ballot in question, the appellant has not been prejudiced by such ruling. Cameron v. Babcock, supra.

■■ Ballot, Exhibit 8A, has a check mark to the right of each of the names of candidates for whom the voter indicated a

choice. Section 7273, Rev. Code 1919, provides that "No elector shall place any mark upon his ballot by which it may afterwards be identified as the one voted by him." The purpose of these provisions is to prevent the identification of ballots and to maintain their secrecy. It is not suggested in the record that these check marks were not made by the voter. It seems to us that in considering the effect of these marks upon this ballot we are called upon to construe in a sense a document. In Patterson v. Hanley, 136 Cal. 265, 68 P. 821, 823, 975, in considering a similar question the court said: "In this connection it should be stated that there is here no question of fact, but only one of law. The same evidence is before us that was before the trial court, viz., the original ballots, —and there is no suggestion in the argument or evidence in the record that they were or might have been altered or tampered with after leaving the hands of the voters who prepared them. In ruling upon their validity, therefore, we are not weighing evidence, but merely construing a document, the contents of which are undisputed." See, also, Le Claire v. Wells, 7 S. D. 426, 64 N. W. 519; Church v. Walker, 10 S. D. 90, 72 N. W. 101.

It clearly appears that these marks at unauthorized places on the ballot were deliberately made, were not merely accidental or inadvertant, and serve to identify the ballot. A mark upon a ballot in an unauthorized place which does not appear to have been made accidentally or inadvertently and which may serve as a distinguishing mark invalidates the ballot, and the intention of the voter cannot be shown other than by what appears upon the face of the ballot. Church v. Walker, 10 S. D. 450, 74 N. W. 198; Ward v. Fletcher, 36 S. D. 98, 153 N. W. 962, 965. The ruling of the trial court is sustained.

This disposes of all of the errors assigned by the defendant. The determination by the trial court that plaintiff is entitled to a certificate of election is supported by the record, and the mere fact that the determination as to the exact number of votes received by each of the candidates is incorrect does not require a reversal.

The judgment appealed from is affirmed.

POLLEY, RUDOLPH, and SMITH, JJ., concur.

WARREN, J., (dissenting). If the majority opinion, concerning Exhibits 6E, 13H, and 14D, is bottomed on the proposition that these erasures amount to spoiled ballots which should have been returned by the elector but which were deposited in the ballot box instead, and should therefore not be counted on account of being spoiled ballots, then this decision, in my judgment, does not fall within the case of Woodruff v. Heltibridle, 37 S. D. 35, 156 N. W. 579, 580. While it is true that considerable is stated as to spoiled ballots in that case, yet the court did not say that spoiled ballots were void ballots. As I understand it, the case of Woodruff v. Heltibridle, supra, was decided purely upon the grounds that the erasures amounted to identification marks. That such was the intention of the court may clearly be drawn from the language employed in saying that this method of marking a ballot furnished a sure means of identification, and that "otherwise his erasures and mutilations might serve as a means of identifying the ballot cast by him." It is my contention that our Code section on spoiled ballots was enacted for the sole benefit of the voter, and gives to him the privilege of returning the spoiled ballot and receiving a new ballot in place thereof, so that no one may know how he voted. Nowhere can I find that such a ballot is void because of the fact that it is a spoiled ballot. In a search for a statutory enactment of what constitutes void ballots, I find section 7278, S. D. Revised Code 1919, but in it there is no mention that spoiled ballots shall be considered void ballots. Neither do I find that ballots having so-called identification marks upon them are referred to by the statute as void ballots. Section 7273, R. C. 1919, merely states: "No elector shall place any mark upon his ballot by which it may afterwards be identified as the one voted by him." By judicial construction, however, the ballots of voters who have violated the above provision are held to be void.

The interpretation in the majority opinion on spoiled ballots seems to be a step in advance of what was said in the case of Woodruff v. Heltibridle, supra, because as I understand it, that case turned on the point that the erasures amounted to identification marks, and not that the ballots should be rejected on account of the fact that they were spoiled ballots, and, as such, should not be counted for the person that the voter intended to favor by his

vote. The court rejected the votes on the ground of being identified ballots, not on account of being spoiled ballots.

The decisions of our state, as well as authorities of other states having similar statutes, consistently hold that in determining the validity of ballots the intention of the voter shall govern. This seems to be a fair construction of section 7265, S. D. Revised Code 1919, which, in part, provides: "The judges in counting the votes shall endeavor to record the intention of the voter." The portion of the section just quoted was construed by this court when it formed part of section 1916, S. D. Pol. Code 1903. That the Legislature intended to safeguard the voter and not disfranchise him is self-evident from section 7278, R. C. 1919, because, in prescribing what should constitute void ballots, the Legislature placed therein a saving clause, as follows: "Provided, that when the "X" marks on a ballot are sufficiently plain to gather therefrom a part of the voter's intention, it shall be the duty of the judges of election to count such part."

In Ward et al. v. Fletcher et al., 36 S. D. 98, 153 N. W. 962, 965, this court said that the courts and election judges should strive to determine and carry out the intention of the elector when satisfied that the elector has endeavored to express such intention in the manner prescribed by law or by directions found upon the ballot, and for that purpose should presume every marking found where the cross should be to be a marking intended as a cross unless the contrary was clear. Thus we have not only the specific mandate of the statute as found in section 7265, R. C. 1919, that the judges in counting the votes shall endeavor to record the intention of the voter, but a decision so holding. In an early decision of Church v. Walker, 10 S. D. 450, 74 N. W. 198, 199, upon rehearing, the court receded from its holding in 10 S. D. 90, 72 N. W. 101, when passing upon certain pencil marks and crosses found upon two ballots counted by the court for the respondent, and held that the mark upon one of the ballots did not constitute an identifying mark. In Church v. Walker, supra, in passing upon the intention of the voter, the court referred to McMahon v. Polk, 10 S. D. 296, 73 N. W. 77, 47 L. R. A. 830, in which we had said that the Legislature never intended to disfranchise a legal voter, and I quote: "Unless, therefore, the ballot has been marked

intentionally, and so marked as to enable a third person to determine from an inspection of it, without other aid, that the same was deposited by a particular person, the judges of election should presume that the marking was inadvertently done, and count the ballot. The object to be attained by the Australian ballot law is to insure a secret ballot; that is, secret as to the judges of election and third persons."

See, also, section 132, 9 R. C. L. 1133, on Manner of Marking, and how cross may be made to satisfy statutory requirements.

In Naramore v. Sprague, 48 S. D. 146, 202 N. W. 905, this court considered certain groups of ballots which contained erasures but on account of offset of ballots did not pass as to their legality. The court stated, however, that the decisions of the courts, and even of our own Supreme Court, were not in harmony on the question of erasures, and stated that many courts held that an erasure should not vitiate the ballot. I believe that it can be said that the prevailing and preponderating thought in the opinions of our court favor the validating and counting of such ballots upon the broad principle that the intention of the voter should govern and a legal voter should not be disfranchised. Such seems to be the prevailing sentiment of this court in all of the election contest cases that have dealt with the marking of ballots, from an early decision of Vallier v. Brakke, 7 S. D. 343, 64 N. W. 180, down to and including Cameron v. Babcock, 63 S. D. 554, 262 N. W. 80, 101 A. L. R. 650.

The majority opinion, in passing upon a number of the exhibits or ballots, recognizes the principles set forth in the decisions I have referred to, as did the trial court. The majority opinion, however, in my opinion, departs from our decisions in attempting to bottom its reasoning upon the case of Woodruff v. Heltibridle, supra. Assuming the correctness of the majority opinion in using this case as a basis, I can see no good reason why this decision should be of a more binding force than what this court said some over a year earlier in Ward et al. v. Fletcher et al., supra. Clearly, if both decisions turn upon what amounts to identification of a ballot, it would appear to me that the facts stated in Ward et al. v. Fletcher et al., supra, as follows, "Another ballot counted in the negative had two X's, one in the center of the square at the

left of the word 'No,' the other to the left of the first and partly within and partly without such square,. This vote was properly counted," would constitute more of an identification mark than the facts in the case of Woodruff v. Heltibridle, supra, as there are two X's which surely stand out conspicuously and tend to attract attention and furnish proof that the, ballot was so marked for the purpose of identification. However, the court said: "While the law only requires one X to be placed in the square, yet, if either of such X's stood alone, it would be deemed a proper marking of the ballot, and there being nothing peculiar or suspicious leading one to believe that there was any intention that either of such X's should be an identification mark, it should not be held such a mark; such marking is clearly distinguishable from a marking intentionally made in an unauthorized place."

There is nothing suspicious about the very slight erasures upon the ballots presented to this court and objected to on the ground that the erasures amount to identification marks.

Let us see what happened after the decision in the case of Woodruff v. Heltibridle, supra, which failed to follow Ward et al. v. Fletcher et al., supra, decided some over a year prior thereto. Turning to our next election contest case, Dunn v. Gamble, 47 S. D. 303, 198 N. W. 821, 822, we find that this court passed upon identification marks. It would seem that an indelible pencil had been used by the voter, and that he had wet his finger and attempted to erase the cross, and the court said: "The result was that he smeared the purple coloring matter over the surface of the paper outside as well as inside the circle. He then made another cross in the center of the circle. The result was a spoiled ballot under the provisions of section 7273, Code 1919, and also making a *conspicuous identification mark*." (Italics mine.)

In commenting upon another ballot, a few lines below the above quotation, the court said: "And made the cross by rubbing the pencil several times back and forth across the circle, thus leaving a *conspicuous identification mark* on the ballot." (Italics mine.)

It will be observed that this court twice used the language, "conspicuous identification mark." From that language, I gather that this court felt that there was a difference between slight and large erasures, because the court used the term "conspicuous

identification mark." The court must have had in mind that this was an outstanding mark such as would amount to an identification and while the court did not say, I gather that a slight erasure would not have been subject to the same rule of law, and if the court had been deliberating on the slight erasures in the case at bar, it would have held that they did not amount to identification marks and would have permitted the ballots to be counted for the appellant.

Credible authorities indicate the general rule to be that where an erasure does not show an intent to make a distinguishing mark and it is so slight as not to be easily discernible, as in the case at bar, a ballot thus marked is not void. Sweetser v. Pacheco, 172 Cal. 137, 155 P. 639; Brown v. Iaukea, 18 Hawaii 131; Rexroth v. Schein, 206 Ill. 80, 69 N. E. 240; and cases cited at page 1157, Ann. Cas. 1918A, in the note following Murray v. Waite, 113 Me. 485, 94 A. 943.

If it appears from the face of the ballot that such marks were placed thereon as the result of an honest effort on the part of the voter to indicate his choice of a candidate among those to be voted for at the election, and that the voter did not thereby attempt to indicate who voted the ballot, it should be counted. Section 133, 9 R. C. L. 1135. Section 133, supra, reads: "* * * And where marks do not necessarily indicate a corrupt purpose, and it is as reasonable to suppose, considering all the circumstances, that they were made in an honest endeavor to comply with the law, it is the duty of the court to ascertain the intent of the voter and to count the ballots. On this theory if identifying marks are placed on the ballot without the knowledge or consent of the voter they do not necessarily render the ballot void. And so marks upon the face of ballots which appear or are shown to have been made accidentally and not for the purpose of indicating the voter, and changes for the existence of which a reasonable explanation consistent with honesty and good faith either appears on the face of the ballot or is shown by proof, do not render the ballots void."

See Voorhees v. Arnold, 108 Iowa 77, 78 N. W. 795; Wall v. Pierpont, 119 Kan. 420, 240 P. 251; and section 134, 9 R. C. L. 1139.

This court in McMahon v. Polk, 10 S. D. 296, 73 N. W. 77, 79, 47 L. R. A. 830, in considering an election contest case between the candidates for the office of state's attorney of Meade county, some forty years ago, in this same county, held: "When there is nothing to show a design to thus mark a ticket for the purpose of invading the secrecy of the ballot by placing an identifying mark thereon, a cross in the circle at the head of a ticket is a vote for every candidate whose name appears in the column, and a *cross upon either side of a name is not ordinarily sufficient to impair the effect in the slightest degree.*" (Italics mine.)

This case has been followed in a number of later decisions, notably, in the case of Naramore v. Sprague, supra, in which this court quoted with approval the following: " ' "The Legislature never intended to disfranchise a legal voter, who, in substantially complying with the mandatory requirements of the law, has, without an evil purpose, but by accident or inadvertance, made a blot or mark upon his ballot, which in no manner tends to distinguish the same, or divulge the secret within his breast." * * * Unless, therefore, the ballot has been marked intentionally * * * the judges of election should presume that the marking was inadvertently done, and count the ballot'."

In a recent decision, Cameron v. Babcock, supra, this court again quoted the above with approval.

If the voters of these ballots did anything they should not have done, it would seem that it was an honest attempt or a mere effort to correct what they may have thought to be an improper marking which in no event destroys their ballots, as there was a lack of intent to place an identifying mark upon their ballots.

I cannot agree to the conclusion reached by the trial court and by the majority opinion, that these ballots should not be counted. The appellant was clearly entitled to have them counted, and the judgment of the trial court should be reversed and an order granted awarding the certificate of election to the appellant.