DURR, Appellant, v. DOUD, et al, Respondents [Intervener]
(278 N. W. 539)

(File No. 8112.   Opinion filed March 29, 1938.)

*Dan McCutchen,* of Belle Fourche, for Appellant.

*L. M. Simons* and *R. A. Smiley,* both of Belle Fourche, for Respondent.

POLLEY, J. On the 27th day of October, 1930, Myrtle G. Doud and Frank A. Doud, defendants in this action, for a valuable consideration made, executed, and delivered to one J. G. White a promissory note whereby they promised and agreed to pay to said White the sum of $12,000 on the 27th day of October, 1935, with interest thereon at the rate of 6 per cent. per annum; and to secure the payment of said note defendants gave to the said White a mortgage on a tract of land in Butte county. Said note and mortgage were given in renewal of a note and mortgage for a similar amount with interest at the rate of 7 per cent. per annum, secured by a mortgage on the same tract of land; which note and mortgage had been executed on the 27th day of October, 1921, and payable on the 27th day of October, 1930. The first above-described note was not paid when due, and on the 13th day of July, 1936, was sold and assigned to the plaintiff herein. The note not being paid on demand, plaintiff on the 11th day of August, 1936, initiated foreclosure proceedings of the said mortgage by advertisement. Upon a showing made by defendants, the judge of the circuit court of Butte county made an order enjoining further proceedings by advertisement on said note and mortgage and directed that further proceedings, if any, thereon be had in the circuit court of said county. Thereupon plaintiff commenced this action to foreclose the mortgage.

In defendant's answer to plaintiff's complaint, they admit the material allegations of the complaint, and by way of affirmative defense allege that during the year 1929 they had entered into an oral agreement with their son, Almond B. Doud, whereby they agreed with the said son that he might construct a dwelling house for his own use on the premises described in said mortgage; that he might occupy the same so long as he should desire; and that he could have the privilege of then removing the said house from the premises as his own property. This contract, if made as alleged

in said answer, constituted no defense whatever to plaintiff's action to foreclose the said mortgage.

After filing the said answer by the defendants, the said Almond B. Doud filed a complaint in intervention in which he set up the alleged agreement set out in defendant's answer and alleged that pursuant to such agreement he had erected a substantial dwelling house at a cost of some $3,500 on the said mortgaged premises; that the said building was erected upon a foundation; and that he had occupied the same as a dwelling house for himself and his family from the time of the construction thereof down to the date of the trial of this action. In his prayer for relief he asked that he be authorized and empowered to remove the said dwelling house from the mortgaged premises as personal property, and that the plaintiff herein be restrained and enjoined from interfering with intervener while he was removing the same.

Plaintiff filed an answer to the said complaint in intervention in which he alleged that the said dwelling house was so constructed as to become a permanent fixture on the mortgaged premises, and that the intervener was thereby estopped from claiming or maintaining any right or interest in said mortgaged premises.

At the trial of the case judgment of foreclosure was entered in favor of the plaintiff and against the defendants Myrtle G. and Frank A. Doud. The court then proceeded to make findings of fact and conclusions of law upon the issues raised by the complaint in intervention. The court found as a fact that the intervener had made an oral agreement with the defendants as alleged in the complaint in intervention; and that he had constructed and occupied the dwelling house upon the mortgaged premises as alleged in said complaint in intervention. The court further found that the intervener had listed the said house as personal property for assessment and caused the same to be assessed against himself as personal property for the years 1930, 1931, 1932, 1933, and 1934. The property was not listed for assessment for the year 1935 and no taxes were assessed against the same nor paid by any one for that year. Shortly after the assessor's return for 1936 was filed, and shortly after plaintiff had purchased the said note and mortgage, the intervener caused the said dwelling house to be assessed against himself as personal property. The court also

found that the said dwelling house was personal property, although the intervener testified that the house was substantially built; and that it rested upon a foundation. The court further found that the note and mortgage involved were past due before the same were assigned to the plaintiff herein. The court then concluded as a matter of law that the intervener was the owner of and entitled to the possession of the said dwelling house as personal property; that he was entitled to remove the same from said premises at his pleasure; and that plaintiff should be enjoined and prohibited from interfering in any manner with the removal of the said dwelling house by the intervener. Judgment was entered accordingly, and plaintiff appeals from the judgment in favor of the intervener.

Whatever rights, if any, that may have been created by the oral agreement, as between the defendants and the intervener, are not involved in this action and we give the same no consideration.

It is the contention of the appellant that the intervener acquired no right as against White, the mortgagee, that would entitle him to remove the building from the mortgaged premises. White lived in the state of California and it does not appear from the record that he ever knew of the alleged agreement between the intervener and the defendants, or of the construction of the building involved. There being no writing of any kind evidencing the alleged contract, of course, there could be no record thereof. It is not shown or claimed that the plaintiff ever had any actual notice of intervener's claimed rights until after he purchased the mortgage. The purpose of showing that the house had been taxed against the intervener was to build up a record that would charge plaintiff with constructive notice of the intervener's claims when plaintiff purchased the mortgage. Assuming that there was a record in the office of the county auditor of the assessment of the house, it did not charge plaintiff with constructive notice of any claimed rights of the intervener. Matters of record are constructive notice of their contents only when made so by statute, and there is no statute making assessor's returns to the county auditor constructive notice of title to or interest in real property. Booth v. Cady, 219 Iowa 439, 257 N. W. 802, 96 A. L. R. 1400. The evidence of the proceedings of the assessor was wholly immaterial to any issue in this case and incompetent for any purpose.

■ A large portion of the arguments of both parties to the action is devoted to a discussion of the status of property that is attached to mortgaged premises after the execution of the mortgage. This of course, relates to the mortgage that was executed on the 27th day of October, 1921, but that is not the mortgage involved in this case. The dwelling house in question was erected in 1929 and constituted a part of the mortgage security when the mortgage involved in this action was executed. The mortgage that was executed in 1921 was payable on the 27th of October, 1930. It was not paid on that date, but in lieu thereof a new note extending the date of the payment of the debt for a period of five years and reducing the interest rate from 7 per cent. to 6 per cent. was accepted by the mortgagee. The increase in the value of the security by reason of the erection of intervener's house may have been the inducement for these indulgences on the part of the mortgagee, although whether the mortgagee knew of the erection of the dwelling house by the intervener does not appear from the record. It is a fact, however, that the house was there and constituted a part of the security when the mortgage was executed and accepted by the mortgagee. Plaintiff knew the house was there. He had seen it and took its value into consideration when he purchased the mortgage. The house constituted part of the consideration for which he paid his money when he made the purchase. In the absence of any knowledge that intervener claimed the house; and in the absence of any agreement between the intervener and the mortgagee to the contrary, the mortgage covered not only the land described in the mortgage, but everything permanently attached thereto. This included the house claimed by the intervener.

■■ Intervener stresses the fact that the note and mortgage were past due when plaintiff purchased the same. But this fact in nowise helps the intervener in this case. The only effect of purchasing a note after maturity is to subject the same to defenses that may exist against the original payee. It is not claimed that any defense existed against the note in the hands of White, the original payee; therefore, there were no defenses against it in the hands of the indorsee. Again, intervener contends that he was in the open and notorious possession of the house when plaintiff purchased the mortgage and that such possession was notice to the world of all his rights in or to the house. This is correct as an

abstract proposition of law; but the intervener was not claiming to be in possession of the mortgaged property. The mortgaged property was owned by and was in the possession and occupancy of intervener's father. Intervener merely occupied a dwelling house that constituted one of a group of buildings on the mortgaged premises. Under these circumstances, the mere occupancy of one of these buildings was not sufficient to put the purchaser of the mortgage upon inquiry as to the nature and extent, if any, of the claimed rights of the intervener in the building occupied by him.

The judgment appealed from is reversed and the cause is remanded to the trial court with directions to dismiss the complaint in intervention. Costs to be taxed against the intervener.

RUDOLPH and WARREN, JJ., concur.

ROBERTS, P.J., and SMITH, J., concur in result.