Leo K. THORSNESS, Plaintiff,

v.

Thomas DASCHLE, Defendant.

Nos. 12645 to 12652, 12657, 12658, 12660, 12663 and 12679.

Supreme Court of South Dakota.

Nov. 27, 1979.

Steven L. Jorgensen of Willy, Pruitt, Matthews & Jorgensen, Sioux Falls, for plaintiff.

Lawrence L. Piersol of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant; Michael L. Luce, Sioux Falls, on brief.

HENDERSON, Justice.

This Court has previously decided that it is empowered to conduct a post-election review of the Thorsness-Daschle election to the United States Congress. See *Thorsness v. Daschle,* 279 N.W.2d 166 (S.D.1979). The review has now been completed. We determine that Daschle won.

Subsequent to our initial decision herein, this Court held a conference with counsel for the parties to narrow the issues presented by this proceeding. Pursuant to that conference, this Court by independent order required counsel to examine all disputed ballots and segregate them into categories in such manner as to eliminate questions not seriously urged with respect to certain ballots, to offset ballots that presented

identical issues as to validity, and to segregate ballots into classes or groups presenting identical questions. Counsel for the litigants and officers of this Court executed this function of the judicial review in the courtroom of the Supreme Court and maintained the integrity of the ballots.

Counsel for the parties then submitted to this Court a report and stipulation regarding the results of their extensive examination and segregation of disputed ballots. The substance of this report and stipulation was that there were ten different categories of disputed ballots; that as of June 13, 1979, Daschle had a lead of 105 votes over Thorsness; that there was no longer an issue of the verification on the selective recount petitions; that 275 ballots for each candidate were offset; that there remained 1,114 ballots still in issue; and that there were five counties in which total wards and precincts were challenged in toto because of alleged irregularities. A full and complete written record was preserved by counsel and officers of this Court with respect to each disputed ballot.

Thereafter, in subsequent argument before this Court, counsel agreed that there were only 1,084 ballots, in ten different categories, for this Court to consider, and both counsel abandoned their positions that the entire vote in wards and precincts in five counties were invalid. On August 27 and 28, the Court inspected and voted upon the 1,084 ballots. In this review, the ballots were counted or not counted based upon the majority view of the Court.

■ There arises in this case the question of whether the Administrative Rules as promulgated are invalid because they allegedly attempt to overrule prior decisions of this Court. In 1974, the legislature created the State Board of Elections and conferred upon it the right to make rules concerning the conducting of elections in this state. SDCL 12–1–5 and SDCL 12–1–9. In 1977, administrative rules were promulgated thereunder.

We indicated in *Nist v. Herseth*, 270 N.W.2d 565 (S.D.1978), and in *Corbly v. City of Colton*, 278 N.W.2d 459 (S.D.1979), that the Board's rules were as binding as statutes. We see no reason to hold to the contrary here. The legislature has determined that the Board should have the rule-making power necessary to prescribe forms providing for uniformity of election procedures (SDCL 12–1–9), to promulgate rules and regulations necessary to clarify the procedures for counting and canvassing ballots (SDCL 12–20–52), and to adopt regulations governing the conduct of recounts (SDCL 12–21–6.1). As is true in other areas of statutorily delegated rule-making authority, the legislature no doubt could have spelled out in greater detail the guidelines or standards to be followed by the Board. The fact that the details of the forms, rules, and regulations were left to be resolved by a bipartisan board does not render those forms, rules, and regulations ipso facto invalid, but rather can be interpreted as reflecting the legislative determination that those details are best left to a board whose duty it is to concentrate its efforts in this area. See *Application of Kohlman*, 263 N.W.2d 674 (S.D.1978).

The Board's rules do, in some instances, have the effect of validating ballots that would have been invalid under our prior decisions. For example, ARSD 5:02:16:17 provides that erasures are not identifying marks; this is in contrast to our holding in *Jewett v. Miller*, 78 S.D. 632, 106 N.W.2d 611 (1960). We do not view this rule, nor the others, as infringing upon our constitutional function of defining and interpreting law. *Bandy v. Mickelson*, 73 S.D. 485, 44 N.W.2d 341 (1950). It is as much an exercise of this constitutional power and function to declare the rules valid as it would be to declare them invalid, and we should not be stayed from the former course by any umbrage at some fancied slight to our judicial role.

■ Another question presented to this Court was the scope of the Court's review in examining the ballots. SDCL 12–21–57 provides in part: "[T]he court may review completely . . . and correct any errors made in the determination . . . as to validity of ballots." When considering the effect of a mark upon a ballot, this

Court stated in *Smiley v. Armstrong*, 66 S.D. 31, 278 N.W. 21 (1938), that the Court is in effect construing a document. This is a process that involves a question of law, not fact, and does not require the Court to weigh evidence. Accordingly, we have determined that our scope of review of the ballots should be de novo.

■ No useful purpose would be served in setting forth in detail the various defects that caused us to reject a number of ballots. As might have been expected, both candidates gained and lost a number of votes. The overall net gain and loss was small, however. Suffice it to say that based upon our holding that the administrative rules are valid and that the scope of review of the ballots is de novo, we determine that Daschle's margin of victory was 110 votes.

Judgment will be entered declaring Thomas Daschle to have received the greater number of votes for the position of Member of Congress from the First Congressional District, State of South Dakota, in the General Election held on November 7, 1978.

WOLLMAN, C. J., MORGAN, J., and TICE and JONES, Circuit Judges, concur.

TICE, Circuit Judge, sitting for DUNN, J., disqualified.

JONES, Circuit Judge, sitting for FOSHEIM, J., disqualified.