Bernard E. DUFFY, Plaintiff
and Appellee,

v.

Curtis D. MORTENSON, Defendant
and Appellant.

No. 18197.

Supreme Court of South Dakota.

Argued Jan. 17, 1993.
Decided March 8, 1993.

Patrick Duffy, Daniel F. Duffy, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiff and appellee.

Curtis D. Mortenson, pro se.

SABERS, Justice.

At the general election of November 3, 1992, there was a contest for Stanley County State's Attorney. Bernard E. Duffy (Duffy), a Democrat, and Curtis D. Mortenson (Mortenson), a Republican, were the candidates for that office. An electronic tabulation of the votes resulted in Mortenson receiving 703 votes and Duffy receiving 702 votes.[1] At the request of Duffy, a recount board was appointed under SDCL ch. 12–21 to recount the votes. The recount board met on November 23, 1992 and determined that Mortenson and Duffy each received 705 votes. Duffy disputed two ballots which the recount board had determined to be votes for Mortenson. The

---

1. Stanley County uses computer punch card ballots which the voter "marks" by using a pointed metal stylus to punch out a chad above the number which corresponds to the candidate. The chads (the rectangular area within the perforations) are pre-scored or perforated so that a bit of paper remains in each of the four corners of the chad to hold the chad to the ballot. When the chad is punched with the stylus, the remaining paper in the four corners and the pre-scored sides are broken and the chad is pushed out. The ballots are then fed into automatic tabulating equipment which is programmed to count the ballots and tabulate the results.

recount board certified these two ballots as disputed ballots [2] under SDCL 12–21–33.

Duffy filed a Petition for Writ of Certiorari which the circuit court granted. After viewing the two disputed ballots under a 40 power stereoscope, the court found that all four corners of the chad above position number 88 [3] on Exhibit 2 had been broken and the chad was partially dislodged, hanging under the ballot. The court counted this vote for Mortenson.

The chad above position number 88 on Exhibit 4, however, had not been dislodged from the ballot. While two corners of the chad had been broken, two remained intact and fewer than three sides of the chad were broken. In concluding that it was impossible to determine whether the voter intended to vote for position number 88 or merely placed the stylus on the chad, hesitated, and then moved on to another contest on the ballot, the court stated:

> [w]here two of the four corners of the chad remain intact and two of the four corners are broken, and only one side of the rectangular hole is broken, it is equally possible that the broken corners are the result of hesitation or inadvertence or that the broken corners are the result of the voter's wish to vote for the candidate.

The court issued a Memorandum Decision [4] concluding that the ballot marked as Exhibit 2 should be counted for Mortenson, and the ballot marked as Exhibit 4, which is the subject of this appeal, should not be counted for Mortenson.

As a result of the trial court's holding, Duffy received 705 votes and Mortenson received 704 votes. Mortenson appeals, raising the following issue:

**2.** These two disputed ballots were later marked as Exhibits 2 and 4. These ballots were not counted by the computer, but were counted by the Recount Board. Only Exhibit 4 is disputed in this appeal.

**3.** To register a vote for Mortenson, a voter punches the chad above position number 88. To register a vote for Duffy, a voter punches the chad above position number 86.

**4.** In concluding that Exhibit 4 should not be counted, the trial court relied extensively upon

Whether it is impossible to determine a voter's intent under South Dakota law when a chad on a punch card ballot is physically disturbed or altered with broken perforations and an indentation.

## Scope of Review

■ This court's scope of review in examining ballots is found in SDCL 12–21–57 which provides in part that "the court may review completely all of the proceedings ... relative to such recount ... and correct any errors made in the determination of questions as to validity of ballots, and in computation of returns, and any errors which may be manifest from such certifications." Accordingly, our scope of review is de novo. *Thorsness v. Daschle*, 285 N.W.2d 590, 592 (S.D.1979).

## Decision

In construing the disputed ballot (Exhibit 4) to determine the effect of this altered chad, this court is governed by South Dakota statutory and administrative rules of construction, as well as stare decisis. *Stellner v. Woods*, 355 N.W.2d 1, 3 (S.D. 1984). "It has long been the rule in this state that it is the duty of courts and election judges to 'determine and carry out the intent of the elector when satisfied that the elector has endeavored to express such intent in the manner prescribed by law or by directions found upon the ballot[.]' " *Stellner*, 355 N.W.2d at 2 (quoting *Ward v. Fletcher*, 36 S.D. 98, 103, 153 N.W. 962, 964 (1915)). To assist this court in determining and carrying out the intent of the voter, SDCL 12–20–7 provides:

> Any ballot or part of a ballot from which it is *impossible* to determine the

rules and procedures for the use of electronic punch card voting systems from other jurisdictions. These rules and procedures require the counting of broken sides and corners of chads. Only if the chad is "completely removed from the card," or "is broken on three sides while still attached to the card by no more than two corners," is a punch considered valid. As indicated below, we are not persuaded with the law from these other jurisdictions. This case is controlled by South Dakota law.

voter's choice shall be void and shall not be counted. When the marks complying with §§ 12–18–16 to 12–18–21, inclusive, on a ballot are *sufficiently plain to gather therefrom a part of the voter's intention* and there are no marks placed on the ballot contrary to § 12–18–22 *it shall be the duty of the judges of election to count such part.*

(Emphasis added.)

■ According to the plain language of this statute, a vote *shall be* counted if the voter's intent is sufficiently plain and *only* if it is *impossible* to determine the voter's choice, shall any ballot or part thereof be void and not counted. This standard is reiterated in the administrative rules adopted by the State Board of Elections. We have previously held that these rules are binding and have the force of law. *Stellner*, 355 N.W.2d at 3 (citations omitted); *Thorsness*, 285 N.W.2d at 591. ARSD 5:02:16:20 provides:

> If in accordance with this chapter it is *impossible* to determine the voter's intent on any ballot or part of a ballot, that portion of the ballot shall be void and shall not be counted as to those races for which the voter's intent cannot be determined. (Emphasis added.)

Additionally, ARSD 5:02:16:16 provides:

> It shall be the duty of the [election] judges to use their best efforts to determine the voter's intent in marking the ballot. This section shall be construed

liberally by the judges to assure that each person's vote is counted.

■ The statutes and rules are clear. It is not the policy of the State of South Dakota to disenfranchise its citizens of their constitutional right to vote. Rather, the policy of the state is to count each person's vote in an effort to determine the true and actual intent of the voters. *See also* SDCL 12–21–1.[5] In tabulating votes and interpreting the manner in which the crosses (X) were made, this court has stated that "[t]he rule in this regard should be liberal so as not to disenfranchise a voter because his hand was unsteady or his vision impaired. . . . That a voter displays a restrained enthusiasm in marking his ballot . . . should not render his effort in vain." *Warne v. Noonan*, 76 S.D. 426, 428, 80 N.W.2d 74, 75 (1956). Only if it is *impossible* to determine the voter's intent is a part of a ballot void and not counted.[6] We presume every marking found where a vote should be to be an intended vote unless the contrary is clear. *Ward v. Fletcher*, 36 S.D. 98, 103, 153 N.W. 962, 964 (1915). "Courts and election judges . . . should presume every marking found where the X should be to be a marking intended as a X unless the contrary is clear." *Id.*

■ There is clearly an alteration on Mortenson's chad # 88.[7] Two of the four corners of this chad have been broken and one side is separated. The area between the perforations is visibly separated and the chad is indented. Additionally, when

---

**5.** SDCL 12–21–1 provides:

The intent of the provisions of this chapter is to procure a speedy and correct determination of the true and actual count of all ballots cast at an election, which ballots are valid on their face, and all provisions of this chapter shall be liberally construed to that end.

**6.** In his brief and during oral argument, Duffy maintained that there was not any "significant evidence" indicating the voter's intent and that the evidence was "simply inconclusive about the voter's intent." Duffy incorrectly relies on SDCL 12–20–7 and regulations 5:02:16:16 and 5:02:16:21 in support of his theory. The evidence does not have to be "significant" nor does it have to be "conclusive." Rather, it must be *impossible* to determine the voter's intent, which is a question of law. As we stated in *Thorsness*, "[w]hen considering the effect of a mark upon a

ballot, this . . . Court is in effect construing a document. This is a process that involves a question of law, not fact, and does not require the Court to weigh evidence." *Thorsness*, 285 N.W.2d at 591–92.

**7.** It is important to note that when Exhibit # 4 is viewed in its entirety, at least four additional chads are partially punched in the same manner. All of these partially punched chads correspond to a number assigned to a candidate or referendum. None of the chads corresponding to the opposition or opposing position were punched in whole or in part. It is clear that when this ballot is viewed as a whole, the partial punching of chad # 88 on Exhibit # 4 was not an accident. Rather, it indicates a voter who, for some unknown reason, displayed "a restrained enthusiasm in marking his ballot." *Warne*, 76 S.D. at 428, 80 N.W.2d at 75.

**440**

this ballot is held up to the light, light clearly passes through the separated side of the partially punched chad. Therefore, we presume that this alteration was intended as a vote for Mortenson. The contrary is not clear because Duffy's chad # 86 was not altered in the slightest.

Under these facts, it is not *impossible* to determine this voter's intent. In fact, it is not only possible, but *likely* this voter intended to vote for Mortenson. Therefore, we hold that this vote counts for Mortenson.

We reverse that portion of the judgment concluding that Exhibit 4 is not counted for Mortenson. Because this causes the election to result in a tie, we remand to the circuit court with directions that further proceedings be conducted pursuant to SDCL 12–21–43.[8] *Stellner*, 355 N.W.2d at 3.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

With dismay, reviewing the ballot de novo, I must express that the voter of ballot Exhibit 4 intended to vote for Mortenson. Thus, this state's attorney's race appears to be tied at 705 votes for each candidate.

I am dismayed because, under SDCL 12–21–43, this state's attorney's race will be determined by the drawing of lots, i.e., by chance. Thus, Dame Fortune decides it all. What a way to pick our public officials! We need greater virtues to sustain a democracy than fortune.

8. SDCL 12–21–43 provides:
 When a tie vote between candidates is found to exist on the basis of any such recount, and by reason of such tie vote it cannot be determined who has been nominated or elected, it shall be the duty of the authority charged by law with the responsibility of issuing the certificate of election or nomination to fix a time and place for the drawing of lots by such candidates involved in such tie vote, giving reasonable notice of such time and place to each of such candi-

To the Committee on Local Government in each house of the State Legislature, take heed. Give us a taste of your quality.

dates. Each such candidate may appear at the time and place designated either in person or by a representative, whereupon in the presence of such authority charged with the responsibility of issuing the certificate of nomination or election, the candidate or candidates entitled to the certificate or certificates of nomination or election shall be determined by drawing of lots in the manner directed by such authority, and the certificate or certificates of nomination or election shall be issued accordingly.