**Leo K. THORSNESS, Plaintiff,**

v.

**Thomas DASCHLE, Defendant.**

**Nos. 12645–12652, 12657, 12658, 12660, 12663 and 12679.**

Supreme Court of South Dakota.

Argued Feb. 9, 1979.

Decided May 30, 1979.

---

1. SDCL 15–26–1(2).

2. Ch. 16, § 5236–4, Compiled Laws of Dakota Territory, 1887.

Steve Jorgensen, of Willy, Pruitt, Matthews & Jorgensen, Sioux Falls, for plaintiff.

Lawrence L. Piersol, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant; Michael L. Luce, Sioux Falls, on the brief.

HENDERSON, Justice (on reassignment).

Upon the motion of Leo K. Thorsness (Thorsness) we issued a writ of certiorari for the purpose of reviewing matters concerning the election of Thomas Daschle (Daschle) to the United States Congress. The writ reserved Daschle's right to question the jurisdiction of this court over the matter. Daschle now asks us to dismiss the action and quash the writ because he asserts that the House of Representatives has final and exclusive jurisdiction to determine the election of its members. We do not agree. Accordingly, the motion to dismiss the petition and quash the writ is denied.

There are two fundamental principles that must be understood in order that there might be a proper analysis of this case. First, there is the question concerning *who won the election,* which necessarily carries with it an inquiry into how the winner was selected. Second, is the question concerning *who will be seated* as the First District Representative of South Dakota in the United States House of Representatives.

■ These two questions are mutually exclusive. The questions "of who won" and the propriety of the election procedure are purely matters of state law. *Roudebush v. Hartke,* 405 U.S. 15, 92 S.Ct. 804, 31 L.Ed.2d 1 (1972). On the other hand, the question of "who sits" is solely within the province of the United States Congress. U.S.Const. art. I, § 5; *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Roudebush v. Hartke,* supra.

Our U.S.Const., art. I, § 4, provides as follows:

> The Times, Places and Manner of holding Elections for Senators and Representatives, *shall be prescribed in each State by the Legislature thereof;* but the Congress may at any time by Law make or alter such Regulations, except as to the Places of choosing Senators. (Emphasis added.)

It should be noted that our United States Constitution provides that the "manner of holding elections" shall be prescribed in each state by the legislature thereof. It is true that Congress has the right to make or alter the regulations of the *manner* of holding elections in each state, but it has not exercised this power. Therefore, the conclusion that we draw is that the *manner* of holding elections in each state in this nation shall be determined under the state law of each respective sovereign state of this Union.

The effect of granting Daschle's motion to dismiss would be to preclude a judicial review of a recount procedure, i. e., the manner of holding elections, in a political election in this state. We cannot agree

with such a holding in light of the United States Constitution or the above-cited authorities. We hold, to the contrary, that this state has the right to decide "who won" and determine the propriety of our election procedures.

■ The action begun by Thorsness under the federal election contest statute, and now pending, cannot address the question of the function and result of the South Dakota election process. That action before the House of Representatives, if it occurs,[1] can only result in a determination of who shall sit in the House of Representatives to represent the First Congressional District of the State of South Dakota.

■ The grievances brought to this court by Thorsness are substantial and if true, as we have to assume under SDCL 12–21–50, represent a breakdown in the recount procedures of sufficient magnitude to demand a judicial inquiry into the matter. For example, the last document filed in this court by Thorsness alleges that a clerical error in the tabulation of recount totals in Clark County, Lake Township, South Dakota, caused a net error of sixty-four votes in favor of Daschle. This allegation is supported by an affidavit signed by the secretary of state and copies of the recount tally sheets. Subtracting that error from the certified result of a Daschle plurality of 139 votes, leaves a mere 75 votes, out of nearly 130,000 votes cast, separating the two candidates. This allegation, together with allegations that various local recount boards exceeded their jurisdiction in ruling on ballots, misinterpreted state law as it applies to ballot counting, and abused their discretion in refusing to count or counting certain ballots, warrants the exercise of judicial scrutiny to protect the integrity of the system as the legislature intended.

■ Our state has an extensive election system, which includes a recount procedure containing sixty-one sections, namely, SDCL 12–21–1 through 12–21–61. The en-

1. See "Contested Elections and Recounts", Vol. 1, Federal Perspective Federal Election Commission, Washington, D.C., (1978). See esp. pp. 106–110, 116.

tire purpose of this recount procedure was intended by the legislature to act as a method of policing and superintending the state's election system so that a candidate is not taken advantage of or deprived of a fair election. Adoption of Daschle's view would totally defeat the legislature's scheme and abrogate the legislative mandate to this court to review the recount procedures of this state. If a defeated candidate has a question regarding the correctness of the ballot-counting procedure in his congressional race, his only recourse is the recount procedure. The final step for a candidate is an application for a writ of certiorari to this court. To deprive him of this is to deprive him of his statutory right and his standing to question the accuracy of the voting process.

In speculating on possible outcomes of this court's review, Daschle raises the unfounded specter of the South Dakota Supreme Court ordering the Governor of South Dakota to issue a certificate of election to Thorsness. We have, of course, not examined the documents and ballots returned in response to our writ. Accordingly, any comment on what those documents and ballots may reveal must be speculative. The only action this court could take in rendering a judgment following review is spelled out by SDCL 12–21–59, which provides:

> The judgment rendered by the court shall be such as the court deems required by the law as applied to the facts disclosed by the record presented, and shall pronounce what the court deems the correct result of the election involved as shown by the record.

There appear to be only three possible judgments: (1) The election produced a tie, in which event SDCL 12–21–43 provides for selection by lot; (2) Daschle won, with the result that Daschle could, if he so desired, place our judgment before the House of Representatives in support of his efforts to have Thorsness' pending contest dismissed, a matter solely within the province of that body; and (3) Thorsness won, in which event Thorsness could place our judgment

before the House of Representatives as evidence of his right to take the seat, just as Daschle's certificate of election and his unconditional seating is evidence of his right to occupy the seat. The House of Representatives would then perform its constitutional duty of determining who shall sit. We could express no opinion on the outcome of that deliberation.

■ We cannot agree with Daschle's conclusion that this court would or could order issuance of a certificate of election. The question of whether this court can order the governor to do anything raises a serious separation of powers question beyond the scope of the present inquiry. SDCL 12–21–50 requires us only to apply the law to the facts and announce the result. Thorsness does not ask us, nor does the statute allow us, to make any orders to any entity.

■ Daschle places a great deal of emphasis on the fact that he has been unconditionally seated by the House of Representatives. That fact goes only to the "who will sit" question, and it is improper for this court to address that matter. We can,. legally, decide only "who we deem has won" and the propriety of the election procedure. It is noteworthy that while the House has seated Mr. Daschle, it has not dismissed the contest filed by Mr. Thorsness.

Daschle reads the *Hartke v. Roudebush* decision, supra, narrowly, noting that it dealt with the United States Senate, that Hartke had been seated conditionally, and that the issue addressed was the authority of a federal court to enjoin the appointment of a recount commission. Prior to the Hartke decision, it was widely believed that the states had little or no control over congressional elections. The United States Supreme Court, after stating that Congress had exclusive authority to determine who sits, went on to hold that where a recount or contest is an integral part of a state's election process those procedures are a valid exercise of a state's authority to control its election procedures, so long as those procedures do not interfere with Congress' abili-

ty to make a final determination of who shall sit.

Justice Reavley, in his dissenting opinion in *Gammage v. Compton,* 548 S.W.2d 1 (Tex.1977), at 5, said that as long as a state court's post-election procedures do not impede an independent determination of the election results by the United States Congress, there is no reason why a state may not protect and enforce its procedures through post-election judicial review. We agree. The possibility that Congress may decide to make its own investigation and determination apart from the judgment of the state court and the fact that Congress has the final authority to make such determination do not constitute a bar to the enforcement of state procedures designed to insure the legal outcome of its elections.

Therefore, Daschle's motion to dismiss the Thorsness petitions and to quash the January 5, 1979, writ of certiorari issued by this court is denied. A conference to narrow the issues pursuant to SDCL 12–21–56 will be scheduled forthwith.

WOLLMAN, C. J., and JONES and TICE, Circuit Judges, concur.

MORGAN, J., dissents.

TICE, Circuit Judge, sitting for DUNN, J., disqualified.

JONES, Circuit Judge, sitting for FOSHEIM, J., disqualified.

MORGAN, Justice (dissenting).

I dissent. The majority opinion calls for an exercise in futility.

How in the world can anyone argue that the questions "who won the election?" and "who will be seated?" are mutually exclu-sive. It is purely an appeal to the provincial and quixotic.

In adopting Thorsness' argument, the majority scrupulously ignores several salient factors. Thorsness argues that Article I, § 4, of the United States Constitution vests in the state legislature the authority to determine "[t]he Times, Places and Manner of holding Elections" for congressional seats. The next section, Article I, § 5, is virtually ignored, but it provides in essential part: "Each House shall be the Judge of the Elections, *Returns* and Qualifications of its own Members[.]" (emphasis supplied) Nowhere is it suggested that the accuracy of the returns, i. e., whether a ballot is or is not to be counted, is not in question.

Let us look at *Roudebush v. Hartke, et al.,* 405 U.S. 15, 92 S.Ct. 804, 31 L.Ed.2d 1 (1972), on which the majority so heavily relies.[1] The United States Supreme Court clearly states that the question "who is entitled to be seated?" is a nonjusticiable political question. The Court then goes on to uphold the right of a candidate to exercise his right to a recount before court-appointed recount commissioners which his opponent had sought to enjoin. It is, first of all, noteworthy that the decision pointed out in detail the distinction between judicial and nonjudicial functions of the courts. Under Indiana statute there was no provision for judicial review, merely for court appointment of the recount commissioners, which the decision denominated a nonjudicial function. So, while assuring the candidate his right to recount board review, the Court in fact reiterated its previous holding in *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), that *the outcome of the election, being a political question, was not a justiciable question* because of the separation of powers provided

1. I do not find "Contested Elections and Recounts," Vol. 1, Federal Perspective Federal Election Commission, Washington, D.C., (1978) referred to in the majority opinion particularly enlightening. The product of one M.A., two Ph.D.s, only one J.D., and a staff of students not otherwise identified is hardly a learned legal treatise. When they say that Roudebush provides criteria for minimum state action to "adopt a complete code for congressional elec-tions, including procedure and safeguards necessary to enforce the fundamental right involved," they are reading far more into Roudebush than I do. No wonder the volume is prefaced with the disclaimer: "Interpretations, opinions, and recommendations presented in this report are those of the authors, and do not necessarily represent the views of the Federal Election Commission."

by the United States Constitution.[2] Thorsness wants the five members of this court to reexamine for a second time the ballots that have been examined and reexamined. The principal contention as to almost every ballot is whether or not it bears an identifiable mark. These issues were presumably argued before the election boards and, beyond any question, were argued before the recount boards. Thorsness wants us to be the court of last guess. I have participated in enough election contests to know the futility of trying to determine whether a ballot was fatally marked by the voter or inadvertently by an election clerk or judge, or perhaps now by recount board members. Lacking some divinely inspired perception, it can be no more than a guess, but it must be made under the guise of the *judicial* function of this court.

Another distinction that I consider important in *Roudebush,* supra, is that Hartke had been seated by the Senate conditionally pending the outcome of the recount and for that reason alone, the United States Supreme Court determined the question was not moot. Daschle, on the other hand, has been seated unconditionally as Thorsness admits. This necessarily implies that the question *is* now moot. What possible reason, then, is there for proceeding with the matter?

The general rules of mootness apply to the application for a writ of certiorari. 14 Am.Jur.2d Certiorari § 8; 14 C.J.S. Certiorari §§ 12, 32. The actual controversy between Thorsness and Daschle ceased upon Daschle's being seated in the House of Representatives. Nor does this fall within the public interest exception to the mootness rule.

> The decision as to whether to retain a moot case in order to pass on a question of public interest lies in the discretion of the court and generally a court will determine a moot question of public importance if it feels that the value of its determination *as a precedent* is sufficient to overcome the rule against considering moot questions. (emphasis supplied) 5 Am.Jur.2d Appeal & Error § 768

What possible precedential value for future elections can be gleaned from a determination that Exhibit 4 from Swan Lake Township of Turner County or Exhibit 20 from Estelline Precinct of Hamlin County, or any of the other seventeen-hundred-plus exhibits, were in fact marked ballots or not? It is a fact question that will have to be determined exhibit by exhibit, case by case, so long as paper ballots are used.

In summation, I believe that the majority has embarked this court on a quest that will expend an extremely large amount of judicial time for no purpose, not unlike Don Quixote riding out to joust with windmills for the favor of the illusory Dulcinea. When the quest is over, whatever the outcome in this court, I am convinced that Daschle will still represent the First Congressional District in the United States Congress.

Finally, it should be noted that Thorsness is not without his right of further review of the recount results, for he can and has filed his contest with the House under the provisions of § 19 of Public Law 91–138 denominated the Federal Contested Elections Act, which is applicable to general elections for representatives in the Congress of the United States. This enactment is now codified as 2 U.S.C. §§ 381–396.

---

**2.** *Powell v. McCormack,* 395 U.S. 486, 518, 89 S.Ct. 1944, 1962, 23 L.Ed.2d 491, 515 (1969).